UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

RESERVE MANAGEMENT COMPANY, INC.,

                         *Plaintiff*,

      -against-

WILLKIE FARR & GALLAGHER LLP AND ROSE F.
DiMARTINO,

                        *Defendants*.

CIV 7045

11 Civ _____ (  )

**NOTICE OF REMOVAL**

        PLEASE TAKE NOTICE that Defendants Willkie Farr & Gallagher LLP ("Willkie") and

Rose F. DiMartino (together "Defendants"), by and through their undersigned attorneys, hereby

remove the above-captioned case bearing Index No. 650668/11 pending in the Supreme Court of

the State of New York, County of New York to the United States District Court for the Southern

District of New York. The grounds for removal are set forth below. This Court has original

jurisdiction over this matter under 28 U.S.C. § 1331 because this matter "aris[es] under the

Constitution, laws, or treaties of the United States," and all the claims and causes of action in the

matter may be removed to this Court under 28 U.S.C. § 1441.

        As grounds for removal, Defendants state as follows:

*The Complaint*

    1.     On or about September 16, 2011, Reserve Management Company, Inc. ("RMCI"

or "Plaintiff") filed a complaint in this action entitled *Reserve Management Company, Inc.* v.

*Willkie Farr & Gallagher LLP and Rose F. DiMartino* (the "Complaint") in the Supreme Court

of the State of New York, County of New York (the "State Court Action"). This case was

assigned the index number 650668/11.

2.     The Complaint alleges that, starting in July 2002, Defendants provided RMCI with counseling on corporate matters arising under the Investment Company Act of 1940 (the "Investment Company Act") and other federal laws and rules.  Compl. ¶ 23.  On September 15-16, 2008, RMCI sought, obtained and followed the legal advice of Defendants concerning compliance with the Investment Company Act.  *See* Compl. ¶¶ 5, 42.  Based on Defendants' advice, RMCI allegedly took certain actions on September 15-16, 2008 for which RMCI alleges that the Securities and Exchange Commission ("SEC") now seeks in an action in this Court captioned *Securities and Exchange Commission* v. *Reserve Management Company, Inc. et al.,* 09 Civ. 4346 (PPG) (the "Pending SDNY Action") to hold it liable for violations of various sections of the Securities Exchange Act of 1934 ("Exchange Act") and Securities Act of 1933 ("Securities Act"), and the Investment Advisers Act of 1940 ("Advisers Act").  *See* Compl. ¶¶ 42-43.  The Complaint summarizes RMCI's theory as follows: "In sum, the SEC is seeking [in the Pending SDNY Action] to hold RMCI and the Bents liable for actions *taken by the Willkie firm.*"  Compl. ¶ 42 (emphasis in original).

3.     The Pending SDNY Action upon which the State Court Action is premised is currently pending before Judge Gardephe in this Court.  Summary judgment motions have been filed by RMCI and the SEC.  RMCI has defended against the SEC's allegations of federal securities law violations by invoking the propriety of Willkie's legal advice on two levels: (1) RMCI maintains that its actions on September 15-16, 2008 were in compliance with the federal securities laws and the Advisers Act, Dkt. 393; and (2) those legal actions were taken upon the implicitly correct advice of counsel - Willkie and Ms. DiMartino, Defendants in the State Court Action.  *See* Dkt. 381 at 22-23.  In other words, the defense of "advice of counsel" has as its centerpiece the proposition that Willkie and Ms. DiMartino correctly interpreted the Investment

Company Act, the Advisers Act, the Securities Act and the Exchange Act, among others, and that RMCI followed that advice -- matters presently squarely presented to Judge Gardephe in the Pending SDNY Action. The SEC has responded to RMCI's advice of counsel defense on the basis that "[a]ny advice rendered by Defendants' counsel either (i) followed, rather than led to, Defendants' conduct; (ii) was ignored by Defendants; (iii) did not sanction the statements Defendants claims it did; or (iv) was not based on full disclosure of all material facts to counsel." Dkt. 399 at 11-13. RMCI has incorporated by reference into its Complaint its summary judgment briefing to Judge Gardephe in the Pending SDNY Action on these very federal questions. Compl. at 10 n.1. In short, the State Court Action hinges on the same federal questions that are *sub judice* in the Pending SDNY Action.

4. In addition, RMCI has alleged that Willkie and Ms. DiMartino committed malpractice by not recommending that RMCI obtain indemnification rights from the Primary Fund. To establish a prima facia claim on this basis, RMCI must therefore prove that RMCI would be entitled to indemnification but for Defendants' alleged negligence. RMCI cannot do so unless it proves that the SEC's claims that it violated the federal securities laws are meritless. Otherwise, any legal expenses incurred in defending the Pending SDNY Action would not be indemnifiable. For that reason, RMCI affirmatively alleges that "the SEC's allegations are without merit, and the defendants in that Action should not be found liable for wrongdoing." Compl. ¶ 3. This and similar indemnification issues are also *sub judice* in the Pending SDNY Action. Dkts. 242, 254, 257, 269 (briefs in support of and against indemnification for the Bents and RMCI).

## *Basis for Removal - Substantive Federal Question*

5. Plaintiff's State Court Action "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any

-3-

congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005). Plaintiffs' malpractice claim depends on a determination of whether Defendants' actions and legal advice on September 15-16, 2008 were in compliance with the federal securities laws. There exists federal question jurisdiction over legal malpractice claims where "the resolution of substantial, disputed question of federal law is necessary to establish an element of plaintiffs' well-pleaded state claims for attorney malpractice." *Nazzaro* v. *Balber*, No. 05 Civ. 2172, 205 WL 1251785, at *5-6 (S.D.N.Y. May 25, 2005) (Haight, J.). Defendants may therefore remove the State Court Action pursuant to 28 U.S.C. §§ 1331 and 1441.

<u>Other Procedural Requirements</u>

6.      Pursuant to 28 U.S.C. § 1446(a) and (b), this Notice of Removal is being filed in the United States District Court for the Southern District of New York within thirty days after September 16, 2011, *i.e.*, the date that Defendants received, through service or otherwise, a copy of the Complaint in the State Court Action.

7.      In accordance with 28 U.S.C. § 1446(a), attached hereto as <u>Exhibit 1</u> are file-stamped copies of all process, pleadings and orders served upon Defendants in the State Court Action, including some (but not all) of the voluminous filings in this Court in the Pending SDNY Action (Dkts. 381, 393, 399, 401-1, 401-2) that are incorporated by reference into the Complaint. Attached hereto as <u>Exhibit 2</u> is a copy of the Related Case Statement pursuant to Local Civil Rule 1.6 and Rule 13(a) of this Court's Rules for the Division of Business Among District Judges.[1]

---

[1]      The State Court Action and the Pending SDNY Action are related cases, as that term is used in

Footnote continued on next page.

8.     Promptly upon the filing of this Notice of Removal, a true copy of this Notice of Removal will be provided to all adverse parties pursuant to 28 U.S.C. § 1446(d).  Pursuant to Fed. R. Civ. P. 5(d), Defendants will file with this Court a Certificate of Service of Notice to Adverse Parties of Removal to Federal Court.

9.     Concurrently with the filing of this Notice of Removal, Defendants are filing a notification of Filing of Notice of Removal with the Clerk of the Supreme Court for the State of New York, County of New York in accordance with 28 U.S.C. § 1446(d).

10.     This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11.

11.     WHEREFORE, this action should proceed in the United States District Court for the Southern District of New York as an action properly removed thereto.

Dated: New York, New York                    Respectfully submitted,
       October 6, 2011

                                             CAHILL GORDON & REINDEL LLP

                                             Thomas J. Kavaler
                                             Michael J. Wernke
                                             Eighty Pine Street
                                             New York, New York 10005
                                             Telephone: (212) 701-3000
                                             Facsimile: (212) 269-5420

                                             *Attorneys for Defendants*

---

Footnote continued from previous page.

Rule 13(a) of this Court's Rules for the Division of Business Among District Judges.  These Actions also involve common questions of law and fact within the meaning of Federal Rule of Civil Procedure 42(a) for the purposes of consolidation, *see Quintel Corporation, N.V.* v. *Citibank, N.A.,* 100 F.R.D. 695 (S.D.N.Y. 1983) (Sweet, J.), an issue that Defendants will raise with Judge Gardephe once before him.

# EXHIBIT 1

INDEX NO. 650668/2011
RECEIVED NYSCEF: 03/14/2011

FILED: NEW YORK COUNTY CLERK 03/14/2011
NYSCEF DOC. NO. 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

RESERVE MANAGEMENT COMPANY, INC.,                    Index No.
BRUCE R. BENT, SR., BRUCE R. BENT II,
ARTHUR T. BENT III AND RESRV                         **SUMMONS**
PARTNERS, INC.,                                      **WITH NOTICE**

                                    Plaintiffs,

                    -against-

WILLKIE FARR & GALLAGHER LLP. and
ROSE F. DiMARTINO,

                                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO THE ABOVE NAMED DEFENDANTS:**

YOU ARE HEREBY SUMMONED to serve a notice of appearance on the plaintiffs' attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear, judgment will be taken against you by default for the relief demanded in the notice set forth below.

**NOTICE:** The object of this action is to recover damages against defendants for (without limitation) legal malpractice, breach of fiduciary duty and breach of contract.

**RELIEF SOUGHT:** A money judgment against defendants and in favor of plaintiffs in the amount of at least $40 million (subject to proof at trial), together with the costs and disbursements of this action and such other and further relief as the Court deems just and proper and supported by the record.

Plaintiffs designate New York County as the place of trial. The basis of venue is plaintiffs' place of business at 1250 Broadway in the County and State of New York.

Dated: New York, New York
       March 14, 2011

                            WARNER PARTNERS, P.C.
                            *Attorneys for Plaintiffs*

                            By: _____ S. Warner

                                Kenneth E. Warner

                            950 Third Avenue, 32nd Floor
                            New York, New York  10022
                            (212) 593-8000

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK .
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
RESERVE MANAGEMENT COMPANY, INC.,                    Index No. 650668/11
BRUCE R. BENT, SR., BRUCE R. BENT II,
ARTHUR T. BENT III AND RESRV
PARTNERS, INC.,

                                    Plaintiffs,            **AFFIDAVIT OF**
                                                          **PERSONAL SERVICE OF**
                                                          <u>**SUMMONS WITH NOTICE**</u>

                    -against-

WILLKIE FARR & GALLAGHER LLP and
ROSE F. DiMARTINO,

                                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK )

        YUDI JIN, being duly sworn, deposes and says:

        Deponent is not a party to the within action, is over 18 years of age and resides at

Queens County, New York.

        On July 12, 2011 at approximately 2:50 p.m., deponent served the within Summons

with Notice upon **Rose F. DiMartino**, one of the defendants herein named, pursuant to CPLR

§308 (2), as follows:

        1.      By delivering a true copy thereof to a person of reasonable age and

discretion at Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York

10019-6099, Ms. DiMartino's actual place of business. Said true copy was delivered to Henry

Kennedy, Esq., a managing attorney at Willkie Farr & Gallagher, LLP. Deponent describes

the individual served as follows: Male, white skin, white hair, 65-69 years old and

approximately 5'10" in height.

2.   A true copy was also mailed to Rose F. DiMartino at her aforementioned actual place of business, in an envelope bearing the legend "PERSONAL AND CONFIDENTIAL" and not indicating on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerns an action against the person to be served.

YUDI JIN

Sworn to before me this
19th day of July, 2011.

Notary Public

**KENNETH E. WARNER**
Notary Public, State of New York
No. 02WA6082479
Qualified in New York County
Commission Expires October 28, 2014

- 2 -

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

                                      Index No.

RESERVE MANAGEMENT COMPANY, INC.,
BRUCE R. BENT, SR., BRUCE R. BENT II,          **SUMMONS**
ARTHUR T. BENT III AND RESRV             **WITH NOTICE**
PARTNERS, INC.,

                        Plaintiffs,

            -against-

WILLKIE FARR & GALLAGHER LLP. and
ROSE F. DiMARTINO,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**TO THE ABOVE NAMED DEFENDANTS:**

    YOU ARE HEREBY SUMMONED to serve a notice of appearance on the plaintiffs' attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear, judgment will be taken against you by default for the relief demanded in the notice set forth below.

    **NOTICE:**  The object of this action is to recover damages against defendants for (without limitation) legal malpractice, breach of fiduciary duty and breach of contract.

    **RELIEF SOUGHT**: A money judgment against defendants and in favor of plaintiffs in the amount of at least $40 million (subject to proof at trial), together with the costs and disbursements of this action and such other and further relief as the Court deems just and proper and supported by the record.

    Plaintiffs designate New York County as the place of trial.  The basis of venue is plaintiffs' place of business at 1250 Broadway in the County and State of New York.

Dated:  New York, New York
       March 14, 2011

                                  WARNER PARTNERS, P.C.
                                  *Attorneys for Plaintiffs*

                             By: _____
                                   Kenneth E. Warner

                                   950 Third Avenue, 32nd Floor
                                   New York, New York  10022
                                   (212) 593-8000

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
RESERVE MANAGEMENT COMPANY, INC.,                 Index No. 650668/11
BRUCE R. BENT, SR., BRUCE R. BENT II,
ARTHUR T. BENT III AND RESRV
PARTNERS, INC.,
                                                         **CORRECTED
                                                          AFFIDAVIT OF
                            Plaintiffs,            PERSONAL SERVICE OF
                                                   <u>SUMMONS WITH NOTICE</u>**
                -against-

WILLKIE FARR & GALLAGHER LLP and
ROSE F. DiMARTINO,

                            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK )

        YUDI JIN, being duly sworn, deposes and says:

        Deponent is not a party to the within action, is over 18 years of age and resides at Queens

County, New York.

        On July 12, 2011 at approximately 2:50 p.m., deponent served the within Summons with

Notice upon **Rose F. DiMartino**, one of the defendants herein named, pursuant to CPLR §308

(2), as follows:

        1.      By delivering a true copy thereof to a person of reasonable age and

discretion at Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019.

Ms. DiMartino's actual place of business. Said true copy was delivered to  Henry Kennedy, Esq.,

a managing attorney at Willkie Farr & Gallagher, LLP.  Deponent describes the individual served

as follows: Male, white skin, white hair, 65-69 years old and approximately 5'10" in height.

2.   A true copy was also mailed to Rose F. DiMartino at her aforementioned actual place of business, in an envelope bearing the legend "PERSONAL AND CONFIDENTIAL" and not indicating on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerns an action against the person to be served.

YUDI JIN

Sworn to before me this
19th day of July, 2011.

Notary Public

KENNETH E. WARNER
Notary Public, State of New York
No. 02WA6082479
Qualified in New York County
Commission Expires October 26, 2014

- 2 -

FILED: NEW YORK COUNTY CLERK 03/14/2011

NYSCEF DOC. NO. 1

INDEX NO. 650668/2011

RECEIVED NYSCEF: 03/14/2011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

RESERVE MANAGEMENT COMPANY, INC.,
BRUCE R. BENT, SR., BRUCE R. BENT II,
ARTHUR T. BENT III AND RESRV
PARTNERS, INC.,

                              Plaintiffs,

                 -against-

WILLKIE FARR & GALLAGHER LLP. and
ROSE F. DiMARTINO,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Index No.

**SUMMONS**
**WITH NOTICE**

**TO THE ABOVE NAMED DEFENDANTS:**

      YOU ARE HEREBY SUMMONED to serve a notice of appearance on the plaintiffs' attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear, judgment will be taken against you by default for the relief demanded in the notice set forth below.

      **NOTICE:** The object of this action is to recover damages against defendants for (without limitation) legal malpractice, breach of fiduciary duty and breach of contract.

      **RELIEF SOUGHT**: A money judgment against defendants and in favor of plaintiffs in the amount of at least $40 million (subject to proof at trial), together with the costs and disbursements of this action and such other and further relief as the Court deems just and proper and supported by the record.

      Plaintiffs designate New York County as the place of trial. The basis of venue is plaintiffs' place of business at 1250 Broadway in the County and State of New York.

Dated: New York, New York
       March 14, 2011

                               WARNER PARTNERS, P.C.
                               *Attorneys for Plaintiffs*

               By: _____
                         Kenneth E. Warner

                               950 Third Avenue, 32nd Floor
                               New York, New York 10022
                               (212) 593-8000

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
RESERVE MANAGEMENT COMPANY, INC.,                    Index No. 650668/11
BRUCE R. BENT, SR., BRUCE R. BENT II,
ARTHUR T. BENT III AND RESRV                              **FURTHER**
PARTNERS, INC.,                                         **CORRECTED**
                                                       **AFFIDAVIT OF**
                                Plaintiffs,         **PERSONAL SERVICE OF**
                                                  **SUMMONS WITH NOTICE**

                    -against-

WILLKIE FARR & GALLAGHER LLP and
ROSE F. DiMARTINO,

                                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK )

        YUDI JIN, being duly sworn, deposes and says:

        Deponent is not a party to the within action, is over 18 years of age and resides at Queens

County, New York.

        On July 12, 2011 at approximately 2:50 p.m., deponent served the within Summons with

Notice upon **Rose F. DiMartino**, one of the defendants herein named, pursuant to CPLR §308

(2), as follows:

        1.      By delivering a true copy thereof to a person of reasonable age and

discretion at Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019.

Ms. DiMartino's actual place of business. Said true copy was delivered to  Henry Kennedy, Esq.,

a managing attorney at Willkie Farr & Gallagher, LLP.  Deponent describes the individual served

as follows: Male, white skin, white hair, 65-69 years old and approximately 5'10" in height.

2.  By mailing on July 18, 2011 (*i.e.,* pursuant to CPLR 308(2), no later than 20 days from the above service) a true copy thereof to Rose F. DiMartino at her aforementioned actual place of business, in an envelope bearing the legend "PERSONAL AND CONFIDENTIAL" and not indicating on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerns an action against the person to be served.

YUDI JIN

Sworn to before me this
29th day of July, 2011.

Notary Public

KENNETH E. WARNER
Notary Public, State of New York
No. 02WA6082479
Qualified in New York County
Commission Expires October 28, 2014

- 2 -

FILED: NEW YORK COUNTY CLERK 03/14/2011

NYSCEF DOC. NO. 1

INDEX NO. 650668/2011

RECEIVED NYSCEF: 03/14/2011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

RESERVE MANAGEMENT COMPANY, INC.,
BRUCE R. BENT, SR., BRUCE R. BENT II,
ARTHUR T. BENT III AND RESRV
PARTNERS, INC.,

                              Plaintiffs,

                  -against-

WILLKIE FARR & GALLAGHER LLP. and
ROSE F. DiMARTINO,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Index No.

**SUMMONS**
**WITH NOTICE**

**TO THE ABOVE NAMED DEFENDANTS:**

       YOU ARE HEREBY SUMMONED to serve a notice of appearance on the plaintiffs' attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear, judgment will be taken against you by default for the relief demanded in the notice set forth below.

       **NOTICE:**  The object of this action is to recover damages against defendants for (without limitation) legal malpractice, breach of fiduciary duty and breach of contract.

       **RELIEF SOUGHT:** A money judgment against defendants and in favor of plaintiffs in the amount of at least $40 million (subject to proof at trial), together with the costs and disbursements of this action and such other and further relief as the Court deems just and proper and supported by the record.

       Plaintiffs designate New York County as the place of trial. The basis of venue is plaintiffs' place of business at 1250 Broadway in the County and State of New York.

Dated: New York, New York
       March 14, 2011

                                 WARNER PARTNERS, P.C.
                                   *Attorneys for Plaintiffs*

                          By: _____ S. Warner

                              Kenneth E. Warner

                          950 Third Avenue, 32nd Floor
                          New York, New York  10022
                          (212) 593-8000

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------- x
                                                              :
RESERVE MANAGEMENT COMPANY, INC.,
BRUCE R. BENT, SR., BRUCE R. BENT II,                          :
ARTHUR T. BENT III and RESRV PARTNERS,
INC.,                                                         :         Index No. 650668/11

            Plaintiffs,                                 :

     - against -                                              :         **NOTICE OF APPEARANCE**

WILLKIE FARR & GALLAGHER LLP and                              :
ROSE F. DIMARTINO,
                                                              :
            Defendants.
-------------------------------------------------------------- x

        PLEASE TAKE NOTICE that defendants Willkie Farr & Gallagher LLP and

Rose F. DiMartino (collectively, "Defendants") hereby appear in the above-entitled action, and

that the undersigned have been retained as attorneys for Defendants.

Dated: New York, New York           WILLKIE FARR & GALLAGHER LLP
       July 29, 2011

                                    By: _____

                                  Stephen Greiner
                                  Tariq Mundiya
                                  Jeffrey B. Korn
                                  787 Seventh Avenue
                                  New York, New York  10019-6099
                                  (212) 728-8000

                                  *Attorneys for Defendants*

6859936.3

To:    WARNER PARTNERS, P.C.
        Kenneth E. Warner
        950 Third Avenue, 32nd Floor
        New York, New York 10022
        (212) 593-8000

        *Attorneys for Plaintiffs*

FILED: NEW YORK COUNTY CLERK 08/05/2011    Filed 10/06/11    Page 19 of 79    INDEX NO. 650668/2011
Case 1:11-cv-07045-UA    Document 1

NYSCEF DOC. NO. 6

RECEIVED NYSCEF: 08/05/2011

At an *ex parte* Part of the Supreme
Court of the State of New York,
County of New York, located at 60
Centre Street, New York, NY, on the
3rd day of ~~July~~, 2011.
August.

PRESENT:

# MARCY S. FRIEDMAN

HON.

Justice

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

RESERVE MANAGEMENT COMPANY, INC.,
BRUCE R. BENT, SR., BRUCE R. BENT II,
ARTHUR T. BENT III AND RESRV
PARTNERS, INC.,

Index No. 650668/11

Plaintiffs,

[Proposed] **ORDER**

-against-

WILLKIE FARR & GALLAGHER LLP and
ROSE F. DiMARTINO,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - ---X

Upon reading and filing plaintiffs' *ex parte* application, supported by the annexed

affirmation of Kenneth E. Warner, Esq., dated July 26, 2011, seeking an extension, pursuant to

CPLR 306-b, of the time within which to serve defendant Rose F. DiMartino with the Summons

with Notice in this action, and due deliberation having been had thereon, it is hereby

ORDERED, that plaintiffs' application is GRANTED pursuant to CPLR 306-b, for good

cause shown and in the interests of justice, and plaintiffs' time within which to serve Ms.

DiMartino with the Summons with Notice herein is extended to twenty (20) days after the date of

~~_____~~ this Order. Said time to expire on the 24th day of August, 2011.

E N T E R :

J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
RESERVE MANAGEMENT COMPANY, INC.,
BRUCE R. BENT, SR., BRUCE R. BENT II,
ARTHUR T. BENT III AND RESRV
PARTNERS, INC.,

                             Index No. 650668/11

                  Plaintiffs,

                             **AFFIRMATION**

      -against-

WILLKIE FARR & GALLAGHER LLP and
ROSE F. DiMARTINO,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ---X

     **KENNETH E. WARNER**, an attorney duly licensed to practice law in the State of New

York, affirms under penalties of perjury and says:

     1.     I am a member of Warner Partners, P.C., attorneys for plaintiffs in the above

entitled action for legal malpractice and breach of fiduciary duty against defendants Willkie Farr

& Gallagher and Rose F. DiMartino, Esq.  These claims arise out of defendants' prior

representation of Reserve Management Corporation, Inc., investment advisor to the Reserve

Primary Fund, which at the time held approximately $62.5 billion in assets.

     2.     The Summons with Notice was electronically filed on March 14, 2011 (copy

attached with confirmation header as Exhibit A).  July 12, 2011 was the 120th day for physically

serving the Summons with Notice on defendants.  That was done with respect to both

defendants, but an issue – explained below -- regarding the effectiveness of service on the

individual defendant has arisen.

3.    Therefore, I submit this affirmation in support of plaintiffs' motion for an Order, pursuant to CPLR 306-b, briefly extending the 120-day period for serving the Summons with Notice, in the interest of justice, so that this case may proceed without any issue over physical service and personal jurisdiction. Granting this relief will not prejudice defendants, will avoid the wasteful process of starting a separate (duplicative) action against the individual defendant and then consolidating it with this one (putting the parties in the same position they are in now) and is in accord with applicable law, holding that "extensions of time [to make service under CPLR § 306-b] should be liberally granted whenever plaintiffs have been reasonably diligent in attempting service." *Murphy v. Hoppenstein*, 279 A.D.2d 410, 410 (1st Dep't 2001).

4.    Prior to July 12, 2011, I had discussions by phone with one of the attorneys at the Willkie firm, Stephen Greiner, Esq., and offered the firm the courtesy of having Mr. Greiner accept service by email as the equivalent of personal service, in lieu of my sending a process server to the firm and effecting service in that manner.   Mr. Greiner agreed and personal service on defendant law firm was made on July 12, 2011 in that manner and is not disputed (copy of email correspondence with Mr. Greiner attached as Exhibit B).

5.    With respect to Ms. DiMartino, however, Mr. Greiner did not agree to accept service and told me that Ms. DiMartino was away and not available to be served in person.  As a result it was necessary for me to have Ms. DiMartino personally served pursuant to CPLR 308(2), involving a person of reasonable age and discretion, followed by a mailing and a filing of proof of service. As a courtesy I offered Mr. Greiner the opportunity to designate a person of "reasonable age and discretion" at the firm (Ms. DiMartino's place of business), rather than having my process server serve any such person at the firm.  In response Mr. Greiner gave me

2

the name of Henry Kennedy, Esq., a managing attorney at the firm.  On July 12, 2011 our

process server, Mr. Yudi Jin, met Mr. Kennedy at the firm's office and gave him a copy of the

Summons with Notice.  Thereafter, on July 18, 2011 – six days later (and well within 20 days of

the aforementioned personal delivery, as per the requirements of CPLR 308(2)) -- the Summons

with Notice was mailed to Ms. DiMartino.  An affidavit of service was filed with this Court

today (again, within the 20 days set forth in CPLR 308(2) for filing such an affidavit of service

(copy of Further Corrected Affidavit of Service attached as Exhibit C).[1]

6.     In a telephone discussion I had earlier this week with Mr. Greiner, he told me on

behalf of Ms. DiMartino that she was disputing the timeliness of personal service on her because

the mailing took place after July 12, 2011, even though it is not disputed that  a person of

reasonable age and discretion was served on July 12 and that the mailing took place within 20

days of that service.

7.     This application is being made promptly upon this dispute having come to my

attention.  To date neither defendant has appeared in this action.

8.     It is in the interest of justice that this issue be put to rest without further delay and

doing so will not prejudice defendants; indeed, dispelling this issue is in everyone's interest –

since that will avoid wasteful motion practice and another filing against Ms. DiMartino

separately, followed by a motion to consolidate and all parties ending up in the same place they

are now.

---

[1]  An affidavit of service filed earlier inadvertently left out the date of mailing in paragraph 2.
However, as noted, the affidavit filed today is still within the 20 days prescribed by CPLR
308(2).

3

9.     Relief of the type sought here is routinely granted in cases like this one -- where (as here) there is no prejudice to defendants, there has been diligence in service efforts, the application is made promptly and a short timeframe is involved beyond the 120-day period.  For example, in *Palladino v. Sargent*, 6 A.D.3d 1082 (4th Dep't 2004), plaintiff sued a law firm and some of its lawyers individually for legal malpractice.  The record in that case "establishe[d] that [one of the defendant lawyers, Sargent] accepted timely service of the papers individually and on behalf of the firm," but the parties disputed whether Sargent also accepted service on behalf of the other lawyer, Gilmore, and it was "undisputed that plaintiff failed to mail the summons to Gilmore at either her last known address or her place of business and thus failed to complete service on Gilmore even if the action was properly commenced." *Id.* at 1083.  In *Palladino*, the plaintiff "ultimately effected personal service on Gilmore, but not until 24 days after the 120 days provided in CPLR 306-b had expired, without first obtaining a court order." *Id.* Even though the plaintiff had not requested an extension from the court prior to its late personal service on Gilmore, the court accepted "plaintiff's alternative request for an order authorizing such relief nunc pro tunc in the interest of justice," reasoning that the "delay was short, the statute of limitations [had] expired, and Gilmore [was] represented by the same attorney as Sargent and her law firm, both of whom were timely served." *Id.*

10.    Generally, courts grant extensions of the 120-day rule where plaintiffs demonstrate good cause for the delay by showing that they diligently attempted to serve defendants, which is the case here. *See, e.g.*, *American BankNote Corp. v. Daniele*, 45 A.D.3d 338, 340 (1st Dep't 2007).  However, the criteria for an extension are so liberal that under the interest of justice standard a showing of reasonable diligence in attempting to effect service is

4

not a threshold factor that must be established before relief can be granted, but is simply one of many relevant factors to be considered by the court. *Leader v. Maroney, Ponzini & Spencer*, 97 N.Y.2d 95 (2001); *see also Busler v. Corbett*, 259 A.D.2d 13 (4th Dep't 1999) (plaintiff was entitled to extension of service under CPLR 306-b in interests of justice, even though she failed to establish good cause for her failure to serve defendants within 120-day period, where plaintiff established that her claim would be extinguished without extension, defendants were served only 28 days after expiration of statutory period for service, plaintiff promptly moved for extension *nunc pro tunc*, and there was no demonstrable prejudice to defendants); *Brown v. Wilson Farms, Inc.*, 861 N.Y.S.2d 878 (4th Dep't 2008) (motion to extend time to serve defendants under 306-b was properly granted because, *inter alia*, plaintiff made the motion promptly after he discovered that, because of law office miscommunication, defendants had not been timely served, plaintiff's meritorious case would have been extinguished without the extension, and defendants did not demonstrate prejudice).[2]

    11.    No prior application for the relief herein requested has been made.

---

[2]  The few cases where courts have denied an extension request are those where clear and undue delay – or no effort at all – to effect service has taken place. *See, e.g., Hafkin v. North Shore Univ. Hosp.*, 279 A.D.2d 86, 88 (2d Dep't 2000) (denying request for extension where plaintiffs "did not proffer any explanation or excuse for the delay of almost eight months between the expiration of the 120-day period and the date of their cross motion requesting an extension of time"); *Riccio v. Ghulam*, 29 A.D.3d 558, 559 (2d Dep't 2006) (denying request for extension where plaintiff "did not allege that she served or attempted to serve any of the appellants or two other defendants").

WHEREFORE, for all of the reasons set forth above, your affirmant respectfully asks this Court to grant the within application and sign the accompanying proposed order extending plaintiffs' time to serve the Summons with Notice in this action on defendant Rose F. DiMartino to twenty (20) days after the date of entry of the accompanying Order.

E. Warner

Kenneth E. Warner

Affirmed this 29th
day of July, 2011.

6



FILED: NEW YORK COUNTY CLERK 03/14/2011
NYSCEF DOC. NO. 1

INDEX NO. 650669/2011
RECEIVED NYSCEF: 03/14/2011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

RESERVE MANAGEMENT COMPANY, INC.,
BRUCE R. BENT, SR., BRUCE R. BENT II,
ARTHUR T. BENT III AND RESRV
PARTNERS, INC.,

                                    Plaintiffs,

                -against-

WILLKIE FARR & GALLAGHER LLP. and
ROSE F. DiMARTINO,

                                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Index No.


**SUMMONS**
**WITH NOTICE**

**TO THE ABOVE NAMED DEFENDANTS:**

        YOU ARE HEREBY SUMMONED to serve a notice of appearance on the plaintiffs' attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear, judgment will be taken against you by default for the relief demanded in the notice set forth below.

        **NOTICE:** The object of this action is to recover damages against defendants for (without limitation) legal malpractice, breach of fiduciary duty and breach of contract.

        **RELIEF SOUGHT:** A money judgment against defendants and in favor of plaintiffs in the amount of at least $40 million (subject to proof at trial), together with the costs and disbursements of this action and such other and further relief as the Court deems just and proper and supported by the record.

        Plaintiffs designate New York County as the place of trial. The basis of venue is plaintiffs' place of business at 1250 Broadway in the County and State of New York.

Dated: New York, New York
        March 14, 2011

                                WARNER PARTNERS, P.C.
                                *Attorneys for Plaintiffs*
                        By: _____ S. Warner
                                Kenneth E. Warner

                                950 Third Avenue, 32nd Floor
                                New York, New York  10022
                                (212) 593-8000



## Ken Warner

**From:** Greiner, Stephen [sgreiner@willkie.com]
**Sent:** Tuesday, July 12, 2011 10:10 AM
**To:** Ken Warner
**Subject:** Re: RMCI/Willkie Farr

Ken. This confirms that I am accepting service of the Summons with Notice on behalf of the firm. I have not been authorized to accept service on behalf of Rose DiMartino. If you wish to leave the Summons for Rose DiMartino with a person of reasonable age and discretion,it can be delivered to Hal Kennedy, our managing attorney,because I am not in the office today. I have alerted Hal to this and you should call him to arrange a time(he will be in much but not all of the day). His t(elephone number is 728 8789.Again this should not be construed as our accepting service on behalf of Ms DiMartino which we are not authorized to do.

**From:** Ken Warner [mailto:KWarner@WarnerPartnersLaw.com]
**Sent:** Tuesday, July 12, 2011 06:55 AM
**To:** Greiner, Stephen
**Subject:** RE: RMCI/Willkie Farr

Steve:

Attached is a copy of the Summons with Notice that was supposed to be attached to the email below, but appears to have been inadvertently omitted. Please confirm receipt on the same terms set forth below, as of today.

I will be sending a process server to the firm today to make service on Ms. DiMartino. As you know, the Summons must be served open and not in an envelope. Since you've told me she's away, would you prefer to be the person of reasonable age and discretion the process server delivers the Summons to? If so, let me know when you will be in your office today and which floor you are on.

Ken

**From:** Greiner, Stephen [mailto:sgreiner@willkie.com]
**Sent:** Monday, July 11, 2011 7:41 PM
**To:** Ken Warner
**Subject:** Re: RMCI/Willkie Farr

Confirmed

**From:** Ken Warner [mailto:KWarner@WarnerPartnersLaw.com]
**Sent:** Monday, July 11, 2011 05:47 PM
**To:** Greiner, Stephen
**Subject:** RMCI/Willkie Farr

Dear Steve:

1

Attached is a copy of the Summons with Notice filed in Supreme Court, New York County.   This is to confirm your agreement, on behalf of Willkie Farr, to accept service of this email transmittal as the equivalent of personal service today of the Summons with Notice on the firm.   Please confirm.

Ken

Kenneth E. Warner, Esq.
Warner Partners, P.C.
950 Third Avenue, 32nd Floor
New York, NY 10022
Tel: 212-593-8000, ext. 173
Fax: 212-593-9058

Confidentiality Notice: The information in this e-mail (including attachments, if any) is considered confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this e-mail is prohibited except by or on behalf of the intended recipient. If you have received this email in error, please notify me immediately by reply email, delete this email, and do not disclose its contents to anyone.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


IMPORTANT NOTICE: This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



No virus found in this message.
Checked by AVG - www.avg.com
Version: 10.0.1390 / Virus Database: 1516/3760 - Release Date: 07/12/11

Exhibit C

FILED: NEW YORK COUNTY CLERK 07/29/2011

NYSCEF DOC. NO. 4

INDEX NO. 650668/2011

RECEIVED NYSCEF: 07/29/2011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
RESERVE MANAGEMENT COMPANY, INC.,            Index No. 650668/11
BRUCE R. BENT, SR., BRUCE R. BENT II,
ARTHUR T. BENT III AND RESRV                        **FURTHER**
PARTNERS, INC.,                                     **CORRECTED**
                                                    **AFFIDAVIT OF**
                        Plaintiffs,              **PERSONAL SERVICE OF**
                                                 **SUMMONS WITH NOTICE**

                    -against-

WILLKIE FARR & GALLAGHER LLP and
ROSE F. DiMARTINO,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK )

        YUDI JIN, being duly sworn, deposes and says:

        Deponent is not a party to the within action, is over 18 years of age and resides at Queens

County, New York.

        On July 12, 2011 at approximately 2:50 p.m., deponent served the within Summons with

Notice upon **Rose F. DiMartino**, one of the defendants herein named, pursuant to CPLR §308

(2), as follows:

        1.      By delivering a true copy thereof to a person of reasonable age and

discretion at Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019.

Ms. DiMartino's actual place of business. Said true copy was delivered to  Henry Kennedy, Esq.,

a managing attorney at Willkie Farr & Gallagher, LLP.  Deponent describes the individual served

as follows: Male, white skin, white hair, 65-69 years old and approximately 5'10" in height.

2.  By mailing on July 18, 2011 (*i.e.*, pursuant to CPLR 308(2), no later than 20 days from the above service) a true copy thereof to Rose F. DiMartino at her aforementioned actual place of business, in an envelope bearing the legend "PERSONAL AND CONFIDENTIAL" and not indicating on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerns an action against the person to be served.

YUDI JIN

Sworn to before me this
29th day of July, 2011.

Notary Public

KENNETH E. WARNER
Notary Public, State of New York
No. 02WA6082479
Qualified in New York County
Commission Expires October 28, 2014

- 2 -

FILED: NEW YORK COUNTY CLERK 03/14/2011

NYSCEF DOC. NO. 1

INDEX NO. 650668/2011

RECEIVED NYSCEF: 03/14/2011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

RESERVE MANAGEMENT COMPANY, INC.,
BRUCE R. BENT, SR., BRUCE R. BENT II,
ARTHUR T. BENT III AND RESRV
PARTNERS, INC.,

Index No.

**SUMMONS**
**WITH NOTICE**

Plaintiffs,

-against-

WILLKIE FARR & GALLAGHER LLP. and
ROSE F. DiMARTINO,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**TO THE ABOVE NAMED DEFENDANTS:**

YOU ARE HEREBY SUMMONED to serve a notice of appearance on the plaintiffs' attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear, judgment will be taken against you by default for the relief demanded in the notice set forth below.

**NOTICE:** The object of this action is to recover damages against defendants for (without limitation) legal malpractice, breach of fiduciary duty and breach of contract.

**RELIEF SOUGHT**: A money judgment against defendants and in favor of plaintiffs in the amount of at least $40 million (subject to proof at trial), together with the costs and disbursements of this action and such other and further relief as the Court deems just and proper and supported by the record.

Plaintiffs designate New York County as the place of trial. The basis of venue is plaintiffs' place of business at 1250 Broadway in the County and State of New York.

Dated: New York, New York
      March 14, 2011

WARNER PARTNERS, P.C.
*Attorneys for Plaintiffs*

By: _____
      Kenneth E. Warner

950 Third Avenue, 32nd Floor
New York, New York 10022
(212) 593-8000

At an *ex parte* Part of the Supreme
Court of the State of New York,
County of New York, located at 60
Centre Street, New York, NY, on the
_____ day of July, 2011.

PRESENT:

          HON. _____ ,
                              Justice

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

RESERVE MANAGEMENT COMPANY, INC.,
BRUCE R. BENT, SR., BRUCE R. BENT II,
ARTHUR T. BENT III AND RESRV
PARTNERS, INC.,

Index No. 650668/11

                          Plaintiffs,

          -against-

WILLKIE FARR & GALLAGHER LLP and
ROSE F. DiMARTINO,

                          Defendants.

[Proposed] **ORDER**

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

          Upon reading and filing plaintiffs' *ex parte* application, supported by the annexed

affirmation of Kenneth E. Warner, Esq., dated July 26, 2011, seeking an extension, pursuant to

CPLR 306-b, of the time within which to serve defendant Rose F. DiMartino with the Summons

with Notice in this action, and due deliberation having been had thereon, it is hereby

          ORDERED, that plaintiffs' application is GRANTED *nunc pro tunc* pursuant to CPLR

306-b, for good cause shown and in the interests of justice, and plaintiffs' time within which to

serve Ms. DiMartino with the Summons with Notice herein is extended to twenty (20) days after

the date of entry of this Order.

                    E N T E R :

                    _____
                         JSC



WARNER PARTNERS, P.C.

ALL STATE LEGAL®
07191-BF • 07192-BL • 07193-GY • 07194-WH
800.222.0510 www.aslegal.com

*Index No.*                     *Year 20* 11

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

RESERVE MANAGEMENT COMPANY, INC.,
BRUCE R. BENT, SR., BRUCE R. BENT II,
ARTHUR. BENT III AND RESRV
PARTNERS, INC.,
                              *Plaintiffs,*

                - against -

WILKE FARR & GALLAGHER LLP. And
ROSE F. DiMARTINO,
                              *Defendants.*

---

### ORDER WITH SUPPORTING AFFIRMATION

---

**WARNER PARTNERS, P.C.**

*Attorney(s) for*           Plaintiffs

950 Third Avenue
New York, New York 10022
(212) 593-8000

---

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.*

*Dated:* ..................................         Signature .................................................................................................

                                                   Print Signer's Name.................................................................

---

*Service of a copy of the within*                                        *is hereby admitted.*

*Dated:*

                                        .................................................................................................
                                                   *Attorney(s) for*

---

### PLEASE TAKE NOTICE

☐ NOTICE OF ENTRY      *that the within is a (certified) true copy of a*
                        *entered in the office of the clerk of the within-named Court on*                    *20*

☐ NOTICE OF SETTLEMENT    *that an Order of which the within is a true copy will be presented for settlement to the*
                          *Hon.*                              *, one of the judges of the within-named Court*
                          *at*
                          *on*            *20*       *, at*          *M.*

*Dated:*

                                                                    WARNER PARTNERS, P.C.

11 JUL 27 AM 11:36
MOTION OFFICE
EX-PARTE
NEW YORK COUNTY
NYS SUPREME COURT

                        *Attorney(s) for*
*To:*                                                               950 Third Avenue
                                                                    New York, New York 10022

*Attorney(s) for*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------x
RESERVE MANAGEMENT
COMPANY, INC.,

              Plaintiff,

       -against-

WILLKIE FARR & GALLAGHER LLP
and ROSE F. DiMARTINO,

              Defendants.
-------------------------------------------------x

Index No. 650668/11

**COMPLAINT**

      Plaintiff, Reserve Management Company, Inc. ("RMCI"), by its attorneys, Warner

Partners, P.C., for its Complaint alleges as follows:

## PRELIMINARY STATEMENT

      1.     This action for legal malpractice arises from numerous instances in which

defendants Willkie Farr & Gallagher LLP ("the Willkie firm") and Rose F. DiMartino

("DiMartino") gave negligent legal advice, and negligently failed to give any advice at all, to

their longtime client, RMCI (as used in this Complaint, references to "the Willkie firm" include,

without limitation, DiMartino).

      2.     RMCI was the investment adviser for the Reserve Primary Fund ("the Fund"), a

money market mutual fund that, prior to September 2008, held approximately $62.5 billion in

assets.  In September 2008, Lehman Brothers Holdings Inc. ("Lehman") declared the largest

bankruptcy in United States history, precipitating a global economic crisis.  The Fund owned

Lehman's commercial paper (representing, however, only a small percentage of the Fund's total

assets), and therefore faced the possibility of investment losses in the wake of the Lehman

bankruptcy. Following substantial redemptions, the Fund has been shut down, and its assets have been substantially liquidated and returned to its investors.

3.    In May 2009, the Securities and Exchange Commission ("the SEC") commenced an action against RMCI (the "SEC Action"), two of its principals – Bruce Bent, Sr. ("Bent Sr.") and Bruce Bent II ("Bent II") – and the distributor for the funds managed by RMCI, Resrv Partners, Inc. ("Resrv"). As set forth in defendants' summary judgment motion in the SEC Action, the SEC's allegations are without merit, and the defendants in that Action should not be found liable for wrongdoing. Nevertheless, to date RMCI has incurred millions of dollars in attorneys' fees and expenses for the defense of the SEC action and various proceedings brought by private investors and state regulators on related matters.

4.    RMCI should not be in this position, and, but for multiple instances of legal malpractice by the Willkie firm, RMCI would not be in this position.

5.    As alleged in greater detail below, on September 15-16, 2008, RMCI sought, obtained, and followed the legal advice of the Willkie firm with respect to, *inter alia*, RMCI's intent to provide credit support for the Fund and its communications with investors regarding same. Upon information and belief, but for the Willkie firm's negligent legal advice, the SEC would not have commenced a fraud action against RMCI and its principals, with its attendant expense to defend against and its generation of destructive, negative publicity.

6.    Moreover, the Willkie firm was negligent in failing to advise RMCI, when it simultaneously represented both RMCI and the Fund with respect to the renewal of the management agreement governing their relationship, that RMCI should obtain from the Fund an agreement to indemnify RMCI for any good-faith acts or omissions that gave rise to liability to third parties, such as the SEC. On information and belief, the Fund would have indemnified

2

RMCI had RMCI simply been advised to seek such indemnification. Thus, had the Willkie firm properly advised RMCI, the millions of dollars in attorneys' fees it has incurred and will continue to incur in defense of the SEC action would have been advanced and/or reimbursed by the Fund.

      7.      Notably, the failures by the Willkie firm to properly advise RMCI emanated in whole or in part from a conflict of interest stemming from its simultaneous/dual representation of both RMCI and the Fund. The Willkie firm never advised RMCI about the risks of such dual representation, nor that it would be less than zealous in seeking full protection for RMCI from its other client, the Fund, when negotiating their management agreement – a transaction in which the two clients had divergent interests.

      8.      For seven months following the Lehman bankruptcy, the Willkie firm continued to simultaneously represent the Fund, on the one hand, and RMCI, on the other hand, even though the aftermath of the September 2008 collapse crystallized a clear and pervasive adversity between these two clients. In around April 2009, after the SEC called attention to the existing manifest conflict of interest, the Willkie firm finally ceased its dual representation of the Fund and RMCI (which dated back to 2002). It thereafter represented only the Fund, and RMCI retained substitute counsel for all matters going forward. Prior to and since then, the Willkie firm has taken positions on behalf of its other client, the Fund, that have been directly adverse to RMCI, in blatant violation of its ethical obligations. Among other things, the Willkie firm obstructed – at the behest of the SEC -- RMCI's ability to obtain insurance proceeds from its insurer; engineered Bent Sr.'s unlawful, without cause ouster from the Fund's Board of Trustees; failed to make any provision for payment by the Fund to RMCI for services it provided to the Fund for the two year period following the Lehman bankruptcy; threatened to make false public

3

allegations about Bent Sr. if RMCI continued to question the trustees' profligate spending of shareholder assets; and orchestrated a retroactive alteration of the Fund's two-year-old, approved meeting minutes in an attempt to bolster the SEC's case against RMCI and the Bents.

## PARTIES

9.     Plaintiff RMCI is a New Jersey corporation with a principal place of business at 1250 Broadway, New York, New York.

10.     Defendant Willkie Farr & Gallagher LLP is a Delaware limited liability partnership with a principal place of business at 787 Seventh Avenue, New York, New York.

11.     Defendant Rose F. DiMartino is a partner of the Willkie firm.  During all relevant time periods DiMartino had day-to-day responsibility for counseling and advising RMCI and its principals.  Upon information and belief, DiMartino resides in New York County.

## JURISDICTION

12.     This Court has personal jurisdiction over defendants pursuant to CPLR 301 *et seq.* because defendants are domiciled and regularly transact business in the State of New York, and because the negligence alleged in this Complaint took place in the County and State of New York.

13.     Venue is proper in this Court pursuant to CPLR 503(a) and 503(c).

## FACTS

### The Relationship Between the Fund and RMCI

14.     A money market fund (also known as money market mutual fund) is an open-ended mutual fund that invests in short-term debt securities, such as United States Treasury bills and commercial paper.

15.     Money market funds are regulated by the SEC pursuant to the Investment

4

Company Act of 1940 (the "Act").

16.     Bent Sr. established the Fund in 1971. It was the first money market fund to be established in the United States. This financial product has been recognized by the American Museum of Financial History, an affiliate of the Smithsonian Institution, for its importance and impact on the nation's financial history. Although wholesale money was bought and sold before Bent Sr. established the Fund, Bent Sr. introduced a formal discipline and developed rules that made this investment vehicle possible. The resulting industry now has assets under management of approximately $3 trillion, serving the conservative and liquid investment needs of tens of millions of investors.

17.     Money market funds typically do not manage their own assets. Instead, a money market fund typically delegates the duty to invest the fund's assets to a separate management company in exchange for management fees.

18.     Until November 2010, Bent Sr. was the Chairman, President, and Treasurer of the Fund, as well as one of its trustees.

19.     The Fund delegated the duty to invest its assets to RMCI, a management company. At all relevant times, Bent Sr. was RMCI's Chairman, and Bent II was its Co-Vice Chairman and President.

20.     The relationship between the Fund and RMCI is governed by a Comprehensive Fee Investment Management Agreement dated June 26, 2007 and amended on July 16, 2007, September 13, 2007, and February 13, 2008, and renewed in September 2008 (the "Management Agreement").

21.     The Management Agreement provides, among other things, that RMCI will invest the Fund's assets, and that in exchange RMCI will be paid a variable percentage of the Fund's

5

average daily net assets.

**The Willkie Firm's Simultaneous Representation of RMCI and the Fund**

22.     The Willkie firm began simultaneously representing RMCI and the Fund in July 2002.

23.     Beginning in July 2002 and continuing in September 2008, the Willkie firm provided both RMCI and the Fund with general counseling on corporate matters arising under the Investment Company Act of 1940 and other laws and rules.

24.     It was or should have been apparent to the Willkie firm that this dual representation created a substantial risk that the clients' interest would at some point diverge with respect to one or more issues of negotiation between RMCI and the Fund -- including without limitation regarding the Management Agreement between the Fund and RMCI -- and that a conflict of interest might arise between the two clients.

25.     During its six-year representation of both the Fund and RMCI, the Willkie firm never advised RMCI of any of the myriad risks created by this dual representation. Nor did it obtain from RMCI an informed waiver of the Willkie firm's conflicting representation of the Fund.

26.     Instead, the Willkie firm provided RMCI with a standard form engagement letter that did not mention, let alone analyze, any of the basic risks of entering into a simultaneous representation with the Fund, and continued to assure RMCI throughout the process that its dual representation of the Fund and RMCI was ethical and proper.

27.     The Willkie firm's failure to advise RMCI about the risks of its dual representation of RMCI and the Fund, and its failure to obtain RMCI's informed consent, violated basic principles of legal ethics.

6

28. The Willkie firm derived a financial benefit from this dual representation, collecting substantial fees it would not have been in a position to obtain had its conflict been disclosed.

**The Willkie Firm's Failure to Advise RMCI**
**to Seek Indemnification from the Fund**

29. The Willkie firm represented both the Fund and RMCI when the Management Agreement was executed in June 2007, amended three times in the eight months thereafter, and renewed on September 10, 2008. The Fund and RMCI had divergent interests when they entered into that contract, and the Willkie firm had a conflict of interest in representing both sides.

30. The Willkie firm never advised RMCI – at any point after it was retained to represent RMCI – with respect to the risks of dual representation in connection with the negotiation, execution, amendment, and renewal of the Management Agreement. Nor did it ever recommend to RMCI that it should at least obtain separate counsel to represent its interests with respect to the negotiation of the Management Agreement. It also never sought or received RMCI's informed consent to its dual representation in connection with the Management Agreement.

31. Paragraph 9 of the Management Agreement provides that RMCI shall not have any liability to the Fund arising from the provision of its investment management services except in the case of willful malfeasance, bad faith, or gross negligence.

32. However, the Management Agreement contains no provision expressly requiring the Fund to indemnify RMCI for losses arising from claims by third parties, or to advance and indemnify RMCI for its attorneys' fees in defending such actions, notwithstanding that the Fund was a $62.5 billion enterprise.

7

33.     Money market funds can agree to indemnify their investment managers with respect to third-party liability arising from the manager's investment services, provided that the manager had not engaged in disabling conduct such as willful malfeasance or bad faith.

34.     Such indemnification provisions may also contain provisions requiring the fund to advance to the investment manager the cost of defending a lawsuit brought against the manager by a third party.  Such provisions – indemnification and advancement – are utilized within the money market fund industry.

35.     The Willkie firm did not advise RMCI properly with respect to indemnification and advancement, including without limitation that RMCI should have sought indemnification and advancement provisions from the Fund with respect to third-party liability.  This was malpractice.  A non-negligent attorney, free of conflict of interest, would have advised RMCI that it could be sued by a third party such as the SEC; that the cost of defending such a lawsuit could be enormous; that money market funds can and do offer indemnification and advancement rights to their investment managers; and that RMCI should seek such indemnification and advancement rights from the Fund as part of its Management Agreement.

36.     On information and belief, had the Willkie firm advised RMCI to seek indemnification and advancement from the Fund, the Fund would have agreed to do so, and such terms would have been included in the Management Agreement between RMCI and the Fund.  Bent Sr. founded the Fund in 1971, and his supervision of the Fund was basic to the Fund's reputation and brand.  This gave RMCI significant leverage in its negotiations with the Fund with respect to the Management Agreement.

37.     By failing to properly advise RMCI with respect to indemnification, the Willkie firm failed to exercise that degree of care, skill, and diligence commonly possessed by a member

8

of the legal community.

**The Willkie Firm's Failure to Competently Advise RMCI**
**in Connection with the Lehman Bankruptcy Filing**

38.     On Monday, September 15, 2008, Lehman filed for bankruptcy.  With over $600

billion in assets, this was and remains the largest bankruptcy filing in United States history.

39.     It was public knowledge that the Fund held $785 million of Lehman commercial

paper.  Because the Fund's exposure to Lehman paper was publicly known, anxious investors

began submitting redemption requests in massive numbers.

40.     The Fund's trustees met three times on September 15, 2008 – at 8:00 a.m., at

9:30 a.m., and at 1:00 p.m. – to consider how to deal with this crisis.

41.     During that morning, RMCI became aware that other money market funds that

held Lehman paper had publicly announced that they were entering into capital support

agreements in order to preserve their Net Asset Value and avoid "breaking the buck."  RMCI

determined that it would also consider entering into a capital support agreement with the Fund.

42.     Before making any such arrangement, RMCI sought advice from the Willkie firm,

which was still representing both RMCI and the Fund.  Based on the Willkie firm's advice,

RMCI took certain actions on September 15-16, 2008 for which the SEC now seeks to hold it

and the Bents liable under the federal securities laws.  Among other things, the Willkie firm, on

behalf of RMCI, prepared a draft no-action letter and credit support agreement that the SEC has

made the centerpiece of its case against RMCI and the Bents.  Specifically, the SEC alleges that

such documents contained a material limitation not found in RMCI's statements to investors and

the Fund's Board of Trustees made earlier that day – statements of which Willkie was fully

aware when it prepared those draft papers and advised RMCI that they were compliant and

proper. In sum, the SEC is seeking to hold RMCI and the Bents liable for actions *taken by the Willkie firm.*[1]

43.     RMCI believes that it and the other defendants in the SEC Action acted in compliance with all federal securities laws on September 15-16, 2008 and otherwise. However, to the extent that it has incurred and will continue to incur expense in connection with the defense of the SEC's investigation and subsequent suit, that expense has been incurred because of the negligent legal services rendered by the Willkie firm.

**The SEC Commences Litigation Against RMCI and the Bents, and RMCI's Defense Is Materially Prejudiced By Its Lack of Right to Indemnification**

44.     In or about May 2009, the SEC commenced litigation against RMCI, Resrv, and the Bents. The SEC's case rests substantially on issues that emanate from faulty legal advice the Willkie firm provided to RMCI on September 15-16, 2008. A non-negligent attorney, versed in securities law as the Willkie firm purported to be, would have advised RMCI in such a manner as to have avoided or neutralized the SEC's claims.

45.     On information and belief, but for this malpractice by the Willkie firm, the SEC would not have initiated litigation against RMCI, Resrv, or the Bents, which carried with it enormous defense costs and negative publicity that caused substantial damage to RMCI's business.

46.     By engaging in this malpractice, the Willkie firm failed to exercise that degree of care, skill, and diligence commonly possessed by a member of the legal community.

---

[1]     The Willkie firm's advice on these matters, and RMCI's conduct in compliance therewith, are more fully set forth in defendants' papers in support of their motion for summary judgment, and in opposition to the SEC's motion for summary judgment, in the pending SEC Action. To that extent, those summary judgment submissions are incorporated herein by reference.

10

47.     Moreover, RMCI has been materially prejudiced by the fact that the Willkie firm

failed to give it proper advice regarding indemnification and advancement.  If RMCI had

obtained express contractual indemnification rights, then once it obtained a judgment in its favor

in the SEC action, RMCI would be able to recoup forthwith from the Fund the attorneys' fees

and other costs it has incurred.  And if it had obtained advancement rights, it would have had

access to those monies from the beginning of the SEC matter.

**The Willkie Firm's Refusal to Withdraw From Representing
the Fund in the SEC Action Despite Its Clear Conflicts of Interest**

48.     The Fund's "breaking of the buck" created even more instantly identifiable

conflicts between RMCI and the Fund.

49.     For example, the Fund was obligated to advance to the Bents, as officers (and in

the case of Bent Sr., a trustee) of the Fund, their defense costs for the shareholder suits and SEC

investigation.  Therefore, the Bents had a claim against the Fund.

50.     RMCI and the Bents were also entitled to reimbursement of their defense costs

under their insurance policy, again putting them in direct conflict with the Fund, which was a co-

insured.

51.     A conflict also ripened between RMCI and the Fund as to how to calculate

management fees under the parties' Management Agreement.

52.     Faced with these clear conflicts of interest between current clients, the Willkie

firm nevertheless did not counsel RMCI about these and other conflicts, nor did it obtain

informed consent from RMCI, nor did it offer RMCI an alternative course of action.

53.     Indeed, far from addressing its conflicts of interest, the Willkie firm expressly

advised the Fund's Board of Trustees on December 3, 2008 – falsely – that "the parties are not

11

clearly adverse and the canons of professional responsibility permit joint representation," and thus that "joint representation benefits the Fund and is reasonable and appropriate." These statements were false.

54. The Willkie firm never even discussed these conflicts of interest with RMCI. Rather, it merely continued its dual representation of RMCI and the Fund, a position that enabled it to continue to enrich itself with enormous legal fees from both sides, without explaining any of the risks to RMCI.

55. Nor did the Willkie firm, while representing both the Fund and RMCI, seek to protect the rights of RMCI. For example, the Willkie firm failed to advise RMCI and the Bents, as the sole claimants under the insurance policy, regarding how they should make claims for the insurance proceeds so that RMCI and the Bents would realize the payment of such proceeds. Instead, the Willkie firm did not support payment of the proceeds to RMCI and the Bents ahead of the Fund and the other insureds under the policy (who never have made any claims against the policy). In addition, in October 2008, the Board of Trustees for the Fund stopped paying RMCI its management fees. Instead of advocating on behalf of RMCI, the conflicted Willkie firm just stood by, failing to provide any useful advice to RMCI regarding the situation – despite RMCI's repeated requests for advice and assistance from the Willkie firm on the issue of payment by the Fund -- and failing to take steps to help RMCI obtain or at least protect those fees, all of which a competent law firm, not conflicted by this simultaneous representation, would have done.

56. Indeed, the Willkie firm did not even take the minimal step of advising RMCI to retain separate counsel on these issues for which RMCI's interests had clearly grown adverse to those of the Fund. Instead, while representing both RMCI and the Fund, it allowed, and in fact actively facilitated, RMCI's continued rendering of services to the Fund without the Fund

12

making contemporaneous payment for those services. As a result of the Willkie firm's neglect, RMCI has had to file multiple applications with the Court to obtain the funds it is owed, including cash laid out by RMCI to cover costs of the Fund – a contentious, expensive, and time-consuming process that continues to this day and would have been avoided had the Willkie firm advised RMCI competently.

57.    To its own detriment and without the proper advice from its counsel, RMCI continued to pay the Willkie firm out of its own pocket. During this period, RMCI was named in various shareholder suits, and the SEC and state investigations began. The Willkie firm entered appearances in these proceedings for both RMCI and the Fund. In doing so, the Willkie firm did not advise RMCI of any possible conflict of interest. The Willkie firm did not issue a new engagement letter explaining the new representation and the risks that a dual representation would entail. The Willkie firm did not counsel RMCI about any of the risks of, nor did it obtain RMCI's informed consent to, such a dual representation. The Willkie firm simply continued representing both RMCI and the Fund in the shareholder lawsuits and the SEC and state investigations.

58.    During its investigation, the SEC required RMCI to produce documents and sit for a series of depositions. In connection with this discovery process, the Willkie firm conducted lengthy interviews of RMCI officers and employees, including the Bents, John Drahzal, Eric Lansky, Brandon Semilof, Elliott Goldstein, Ming Hatch, and Ryan Green. During these interviews, RMCI's personnel dutifully confided in the Willkie firm, despite the Willkie firm's stark conflicts of interest, and despite the fact that (as discussed *infra*) the Willkie firm would soon discontinue its representation of RMCI and take positions directly adverse to RMCI.

59.    In March 2009, the SEC informed the Willkie firm that representing both the

13

Fund and RMCI presented a conflict of interest.

60.    As a result, on April 9, 2009, the Willkie firm withdrew as counsel for RMCI but continued to represent the Fund.

61.    New York law is clear that an attorney may not take a position adverse to a former client (let alone a current client) in a substantially related matter without informed consent.

62.    Notwithstanding this fundamental precept of legal ethics, the Willkie firm has, since withdrawing as RMCI's counsel, taken a number of positions directly and improperly adverse to RMCI.  For example, on behalf of the Fund, the Willkie firm interfered with the Bents' receipt of insurance proceeds that would cover their costs of defending the SEC litigation.

63.    Specifically, on October 6, 2009, acting at the behest of the SEC (RMCI's adversary in intensely contested litigation), DiMartino contacted RMCI's insurer and improperly obstructed its release of the proceeds of the policy to RMCI, ostensibly based on a "draft order sent by the staff of the Securities and Exchange Commission," and despite RMCI being the first named insured on that policy,

64.    As a result, RMCI still has not received any insurance proceeds, although it is entitled to them.

65.    The Willkie firm neither sought nor received informed consent prior to taking a position adverse to RMCI with respect to the insurance proceeds issue.

66.    DiMartino also threatened that if the Bents did not stop citing instances of the wasting of shareholder assets by the Fund's trustees, the Fund would issue a press release attacking Bent Sr. on an irrelevant and untrue matter.  The Willkie firm's threat came in response to a letter from RMCI advising the Court that the trustees had spent $17 million of Fund assets

14

for professional and trustee fees without a Court order – much of it in plain violation of the Court's June 8, 2009 so-ordered Stipulation prohibiting the Fund from making distributions, except *pro-rata* shareholder distributions and other "necessary and ordinary business expenses incurred in the ordinary course."

67.     On information and belief, the Willkie firm's purpose in threatening the Bents was to cause the Bents, by intimidating them, to stop reporting waste of the Fund's assets to the Court.

68.     Given that the Willkie firm was itself the largest recipient of the trustees' payments, the Willkie firm's contention as the Fund's counsel – that it was acceptable to pay the Willkie firm in excess of $7 million (and counting) without Court order as a purported "ordinary business expense," but that it was not acceptable to reimburse RMCI for the actual cost of operating the Fund over the prior two years – was self-serving, inconsistent, unreasonable, unethical, and plainly adverse to RMCI.

69.     The Willkie firm neither sought nor received informed consent prior to taking a position adverse to RMCI with respect to this issue.

70.     When RMCI rejected the Willkie firm's threats and intimidation, the Willkie firm then engineered, with improper and inadequate notice (only a few hours), the without cause removal of Bent Sr. from the Fund's Board of Trustees by virtue of a voidable and otherwise improper by-law amendment, notwithstanding that Bent Sr. had been duly elected by the Fund's shareholders. These actions were in contravention of the Fund's Declaration of Trust. The Independent Trustees did not have the power or authority to amend the by-laws to effect the without cause removal of Bent Sr., who had been appointed as Chairman by the shareholders of the Fund.

15

71.    The Willkie firm's conflicted legal maneuvering therefore put the Fund in the perilous position of being operated by an unlawful Board, the actions of which can be claimed to be a nullity.  The foregoing evidences the Willkie firm's single-minded, misplaced effort to be free of Bent, Sr.'s wholly appropriate oversight of the firm's activities and services and to protect and continue its receipt of legal fees at any cost.

72.    As a direct result of the Willkie firm's engineering of Bent Sr.'s ouster from the Fund's Board, the Willkie firm is now able to charge the Fund huge legal fees without any scrutiny of its bills by Bent Sr. and without having to deal with RMCI's legitimate claims and viewpoints.

73.    The Willkie firm neither sought nor received informed consent from RMCI prior to taking a position adverse to RMCI with respect to this issue.

74.    Moreover, the Willkie firm worked with the SEC to alter the unanimously approved September 15, 2008 minutes of the Fund's Board meeting in an attempt to bolster certain allegations in the SEC's case.  Because the Willkie firm attended the September 15, 2008 Board meetings as counsel to both the Fund and RMCI, this effort by the Willkie firm directly related to the Willkie firm's simultaneous representation of the Fund and RMCI and the conflict caused by that dual representation.  The Willkie firm now seeks to justify having altered the September 15, 2008 Board minutes on the ground that it undertook such action "in response to the SEC."

75.    Not only did DiMartino engineer the alteration of the Board minutes (under the guise of being a "clarification"), but she did so with full knowledge that the effect would be to make them inaccurate.  Specifically, in a 2008 deposition, she testified that redemption levels reported to the Board at the September 15, 2008 meeting were close to the number set forth in

16

the original approved minutes, which is contrary to what the "clarification" of the Board minutes portrays.

76.    DiMartino acted as set forth above knowing that the alteration of the Board minutes was intended to bolster the SEC's case against her former clients, regarding a subject matter of the dual representation (RMCI's presentation at the September 2008 Board meeting), as part of the same SEC matter in connection with which the Willkie firm formerly represented RMCI. Moreover, she provided no advance notice of her actions to Bent, Sr., who at that time was (in addition to an RMCI principal) also still the Fund Chairman. Instead she acted in secret, at the behest of the Independent Trustees, who were separately represented, and in response to the SEC.

77.    The Willkie firm's explanation that it acted "in response to the SEC" in no way absolves it of its conflict of interest or of its wrongful conduct. To the contrary, it aggravates it. The SEC is adverse to RMCI in the SEC litigation, and thus the entirely voluntary decision by the Willkie firm to do the SEC's bidding -- by recasting inaccurately events occurring when the Willkie firm was simultaneously representing the Fund and RMCI -- was a purposeful, unethical act of disloyalty against RMCI.

78.    The Willkie firm neither sought nor received informed consent prior to taking a position adverse to RMCI with respect to this issue.

79.    On September 30, 2010, RMCI asked the Willkie firm to withdraw as Fund counsel because of the conflicts of interest between the Fund and RMCI.

80.    After a series of letters explaining the conflict and a follow up meeting, the Willkie firm refused to withdraw from representing the Fund.

17

## FIRST CAUSE OF ACTION
### (Legal Malpractice)

81.    Each of the foregoing paragraphs 1 through 80 is hereby repeated and realleged with the same force and effect as if fully set forth herein.

82.    RMCI had an attorney-client relationship with the Willkie firm.

83.    The Willkie firm simultaneously represented both RMCI and the Fund.

84.    This dual representation gave rise to numerous clear conflicts of interest.

85.    The Willkie firm never discussed the risks of this dual representation with RMCI, nor did the Willkie firm ever advise RMCI about the existence of these conflicts of interest, nor did it ever seek or obtain RMCI's informed consent.

86.    These conflicts of interest facilitated numerous acts of malpractice by the Willkie firm, as described above.

87.    The Willkie firm continues to injure RMCI by taking the adverse actions against RMCI alleged above.

88.    As a direct and proximate result of the Willkie firm's misconduct, RMCI has suffered damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty)

89.    Each of the foregoing paragraphs 1 through 80 is hereby repeated and realleged with the same force and effect as if fully set forth herein.

90.    The Willkie firm withdrew as counsel for RMCI on or about April 9, 2009.

91.    As RMCI's former counsel, the Willkie firm continued to owe RMCI a fiduciary duty of loyalty.

18

92.     The Willkie firm breached this fiduciary duty of loyalty by repeatedly taking positions directly adverse to RMCI, as described above.

93.     The Willkie firm neither sought nor received informed consent prior to taking positions adverse to its former client, RMCI, in a substantially similar matter.

94.     By virtue of the foregoing breaches of fiduciary duty, RMCI has been damaged in an amount to be determined at trial.

**WHEREFORE**, plaintiff RMCI requests judgment in its favor and against defendants as follows:

A.     Compensatory damages in an amount to be proven at trial; and

B.     Such other and further relief as this Court deems just and proper, together with all costs, fees, pre and post judgment interest and disbursements relating to this proceeding.

DATED:  New York, New York
          September 16, 2011

                             WARNER PARTNERS, P.C.
                             *Attorneys for Plaintiff*

By:                               
                    Kenneth E. Warner
                    Eric Hecker (of counsel)
                    950 Third Avenue, 32nd Floor
                    New York, NY 10022
                    Tel:  (212) 593-8000

Footnote 1 on page 10 of Plaintiff's Complaint incorporates by reference the summary judgment papers in *Securities and Exchange Commission* v. *Reserve Management Company, Inc. et al.,* 09 Civ. 4346 (PPG) on file in this courthouse before Judge Gardephe.  Those docket entries are nos. 378 - 409, 413.  Attached behind this tab, for the Court's convenience, are certain of the docket entries that are incorporated by reference in the Complaint - docket entry nos. 381, 393, 399, 401-1, 401-2.

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re THE RESERVE FUND SECURITIES AND DERIVATIVE LITIGATION | 09 MD 2011 (PGG) |
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | No. 09 Civ. 4346 (PGG) |
| RESERVE MANAGEMENT COMPANY, INC., RESRV PARTNERS, INC., BRUCE BENT SR., and BRUCE BENT II, | ECF Case |
| Defendants, | |
| and | |
| THE RESERVE PRIMARY FUND, | |
| Relief Defendant. | |

DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO THE SEC'S MOTION FOR SUMMARY JUDGMENT

DUANE MORRIS LLP
1540 Broadway
New York, NY 10036
(212) 692-1000
Attorneys for Defendants
Reserve Management Company, Inc. Resrv Partners,
Inc., Bruce R. Bent, Sr. and Bruce R. Bent II

TABLE OF AUTHORITIES .................................................................................................iii

PRELIMINARY STATEMENT………………………………………………….. ...........1

THE SEC'S VERSION OF THE FACTS IS NOT UNDISPUTED .............................................3

ARGUMENT…………………………………………………………………………10

I.     THE SEC CANNOT SUSTAIN ITS SUMMARY JUDGMENT BURDEN .......10

II.    THE SEC HAS NOT COME CLOSE TO SHOWING THAT IT IS
ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS CLAIMS
UNDER SECTIONS 10(b) and 17(a)..................................................................11

    A.   The SEC Cannot Establish the "In Connection With" Element of Its
Claims………………………………………………………… ...............11

        1.   Representations to the Board Are Not Actionable Under
§§10(b) and 17(a)…………………………………….....................11

        2.   Statements Intended to Induce Investors Not to Redeem In
Connection With" the Purchase or Sale of a
Security………………………………………………… ........12

        3.   The SEC's Evidence of Purchases Is Improper and Does Not
Satisfy the "In Connection With" Requirement………...............13

    B.   The SEC Cannot Establish A Material Misstatement………………….......14

    C.   The SEC Cannot Establish the Falsity Element of Its
Claims………………………………………………………….. .............16

    D.   The SEC Cannot Establish the Scienter Element of Its
Claims………………………………………………………….. .............18

        1.   The SEC Cannot Establish Recklessness As a Matter of
Law…………………………………………………… ........18

        2.   Defendants' Expert Reports Further Reinforce Lack of
Scienter .......................................................................................21

        3.   A Valid Advice of Counsel Defense Exists Here……………....22

        4.   Ledford's Statements to Moody's Were Unauthorized and
Cannot Be Imputed to RMCI………………............................23

III.   THE SEC CANNOT ESTABLISH ALL OF THE ELEMENTS OF
CONTROL PERSON LIABILITY UNDER §20(a)……………………….. ...........24

IV.    THE SEC CANNOT ESTABLISH A RIGHT TO RELIEF ON ITS
       ADVISERS ACT CLAIMS....................................................................25

       A.    No Violation of §§206(1) and (2) Can Be Shown...............................25

       B.    The SEC Has Not Established an Entitlement to Judgment on Its
             §206(4) Claim...................................................................31

V.     THE SEC HAS NOT SHOWN AN ENTITLEMENT TO ANY OF THE
       RELIEF REQUESTED..........................................................................31

       A.    The SEC Has No Evidence That an Injunction Is Necessary to Prevent
             a Recurrence...................................................................31

       B.    The SEC Admits That It Has No Evidence of Any Ill-Gotten Gains........33

       C.    The SEC's Request for Penalties Is Unsupported By the Law and
             Based on Arguments It Should Be Estopped From Making.................35

CONCLUSION...............................................................................................35

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                          <u>Page</u>

Abrash v. <u>Fox</u>,
   805 F. Supp. 206 (S.D.N.Y. 1992) ...........................................................................13

Allen v. <u>Coughlin</u>,
   64 F.3d 77 (2d Cir. 1995)......................................................................................11

In re Alstom SA Secs. Litig.,
   406 F. Supp. 2d 433 (S.D.N.Y. 2005)....................................................................25

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986)..............................................................................................11

ATSI Communs., Inc. v. Shaar Fund, Ltd.,
   493 F.3d 87 (2d Cir. 2007).....................................................................................25

In re Bank of Am. Corp. Secs.,
   2010 U.S. Dist. LEXIS 89199 (S.D.N.Y. Aug. 27, 2010) ......................................16

In re Elan Corp. Sec. Litig.,
   543 F. Supp. 2d 187 (S.D.N.Y. 2008).....................................................................27

Ernest Lawrence Group v. Mktg. the Ams., Inc.,
   2005 U.S. Dist. LEXIS 25307 (S.D.N.Y. Oct. 26, 2005) ........................................10

Ernst & Ernst v. Hochfelder,
   425 U.S. 185 (1976)..............................................................................................12

Feit v. Leasco Data Processing Equip. Corp.,
   332 F. Supp. 544 (S.D.N.Y. 1971) .........................................................................15

Freschi v. Grand Coal Venture,
   551 F. Supp. 1220 (S.D.N.Y. 1982)........................................................................14

Golar v. Daniels & Bell, Inc.,
   533 F. Supp. 1021 (S.D.N.Y. 1982)........................................................................12

Intellivision v. Microsoft Corp.,
   2011 U.S. Dist. LEXIS 29950 (S.D.N.Y. Mar. 23, 2011) ......................................35

Kalnit v. Eichler,
   85 F. Supp. 2d 232 (S.D.N.Y. 1999),
   <u>aff'd</u>, 264 F.3d 131 (2d Cir. 2001)............................................................................24

Leberman v. John Blair & Co.,
    880 F.2d 1555 (2d Cir. 1989)..................................................................................22

Luce v. Edelstein,
    802 F.2d 49 (2d Cir. 1986).....................................................................................17

Nationwide Life Ins. Co. v. Bankers Leasing Ass'n,
    182 F.3d 157 (2d Cir. 1999)...................................................................................10

Novak v. Kasaks,
    216 F.3d 300 (2d Cir. 2000)...................................................................................20

In re Parmalat Sec. Litig.,
    659 F. Supp. 2d 504 (S.D.N.Y. 2009)....................................................................10

In re Parmalat Sec. Litig.,
    684 F. Supp. 2d 453 (S.D.N.Y. 2010)....................................................................23

In re Phillips Petroleum Sec. Litig.,
    881 F.2d 1236 (3d Cir. 1989)............................................................................ 18-20

Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of
    Commerce,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010)....................................................................20

Press v. Chem. Inv. Servs. Corp.,
    166 F.3d 529 (2d Cir. 1999)..............................................................................17, 31

In re Salomon Analyst AT&T Litig.,
    350 F. Supp. 2d 455 (S.D.N.Y. 2004)....................................................................16

SEC v. Batterman,
    2002 WL 31190171 (S.D.N.Y. Sept. 30, 2002).....................................................28

SEC v. Bausch & Lomb, Inc.,
    565 F.2d 8 (2d Cir. 1977).......................................................................................31

SEC v. Biovail Corp.,
    2010 U.S. Dist. LEXIS 27604 (S.D.N.Y. Mar. 18, 2010) ......................................22

SEC v. Biovail Corp.,
    2010 U.S. Dist. LEXIS 59700 ...........................................................................15, 18

SEC v. Caserta,
    75 F. Supp. 2d 79 (E.D.N.Y. 1999) ...................................................................17, 22

SEC v. Commonwealth Chem. Sec., Inc.,
    574 F.2d 90 (2d Cir. 1978)...........................................................................................32

SEC v. First Jersey Sec., Inc.,
    101 F.3d 1450 (2d Cir. 1996)..................................................................................17, 22

SEC v. Infinity Group Co.,
    212 F.3d 180 (3d Cir. 2000)........................................................................................17

SEC v. Invest Better 2001,
    2005 WL 2385452 (S.D.N.Y. May 4, 2005) .........................................................35

SEC v. Jadidian,
    2011 U.S. Dist. LEXIS 36485 (S.D.N.Y. Mar. 31, 2011) ......................................32

SEC v. Jakubowski,
    150 F.3d 675 (7th Cir. 1998) ................................................................................ 19-20

SEC v. Johnson,
    2005 U.S. Dist. LEXIS 4732 (S.D.N.Y. Mar. 24, 2005) ........................................24

SEC v. Johnson,
    2006 U.S. Dist LEXIS 50307 ....................................................................................33

SEC v. Jones,
    476 F. Supp. 2d 374 (S.D.N.Y. 2007)................................................................. 32-33

SEC v. Kelly,
    2011 U.S. Dist. LEXIS 3290 (S.D.N.Y. Jan. 7, 2011)............................................34

SEC v. Kenton Capital,
    69 F. Supp. 2d 1 (D.D.C. 1998) ................................................................................35

SEC v. Leffers,
    289 Fed. Appx. 449 (2d Cir. 2008)...........................................................................22

SEC v. McNulty,
    137 F.3d 732 (2d Cir. 1998).......................................................................................20

SEC v. Meltzer,
    440 F. Supp. 2d 179 (E.D.N.Y. 2006) .................................................................10, 15

SEC v. Mgmt. Dynamics, Inc.,
    515 F.2d 801 (2d Cir. 1975).......................................................................................32

SEC v. Monarch Funding,
    192 F.3d 295 (2d Cir. 1999).......................................................................................11

SEC v. Northshore Asset Mgmt.,
    2008 U.S. Dist. LEXIS 36160 (S.D.N.Y. May 5, 2008)..........................................................12

SEC v. PIMCO Advisors Fund Mgmt. LLC,
    341 F. Supp. 2d 454 (S.D.N.Y. 2004)...............................................................................25

SEC v. Reserve Mgmt. Co.,
    732 F. Supp. 2d 310 (S.D.N.Y. 2010)................................................................................8

SEC v. Rorech,
    720 F. Supp. 2d 367 (S.D.N.Y. 2010)...............................................................................11

SEC v. Sheyn,
    2010 WL 3290977 (S.D.N.Y. Aug. 9, 2010).........................................................................35

SEC v. Snyder,
    292 Fed. Appx. 391 (5th Cir. 2008)..................................................................................21

SEC v. Svoboda,
    409 F. Supp. 2d 331 (S.D.N.Y. 2006)............................................................................ 32-33

SEC v. Tambone,
    550 F.3d 106 (1st Cir. 2008),
    rev'd on other grounds, 597 F.3d 436 (1st Cir. 2010) ...........................................................28

SEC v. Texas Gulf Sulphur Co.,
    401 F.2d 833 (2d Cir. 1968)...........................................................................................13

Slayton v. Am. Express Co.,
    604 F.3d 758 (2d Cir. 2010)...........................................................................................27

South Cherry St., LLC v. Hennessee Group LLC,
    573 F.3d 98 (2d Cir. 2009).............................................................................................18

TCS Capital Mgmt., LLC v. Apax Partners, L.P.,
    2008 U.S. Dist. LEXIS 19854 (S.D.N.Y. Mar. 7, 2008) ........................................................12

Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.,
    531 F.3d 190 (2d Cir. 2008)...........................................................................................23

Troyer v. Karcagi,
    476 F. Supp. 1142 (S.D.N.Y. 1979).................................................................................13

United States v. Autuori,
    212 F.3d 105 (2d Cir. 2000)...........................................................................................17

Va. Bankshares v. Sandberg,
   501 U.S. 1083 (1991)...................................................................................................... 16-17

Vt. Teddy Bear Co., Inc. v. 1-800 BEARGRAM Co.,
   373 F.3d 241 (2d Cir. 2004)...............................................................................................10

In re Wachovia Equity Secs. Litig.,
   753 F. Supp. 2d 326 (S.D.N.Y. 2011)..............................................................................18, 20

Wechsler v. Steinberg,
   733 F.2d 1054 (2d Cir. 1984)...............................................................................................17

Wright v. Ernst & Young LLP,
   152 F.3d 169 (2d Cir. 1998)................................................................................................12


Other Authorities

Fed. R. Civ. P. 56(d) ..........................................................................................................14

## PRELIMINARY STATEMENT

Knowing that Defendants would be moving for summary judgment, the SEC apparently felt compelled to do so as well. The resulting motion should be denied because it is based upon facts that are not undisputed, evidence that is not admissible, and legal theories that were not set forth in the Complaint, that the SEC expressly represented it would not pursue, and that in many cases are just plain wrong. While the SEC may someday be able to use parts of its motion in a post-trial brief – should any of its claims make it to trial – nothing it says here is appropriate on summary judgment, and the motion should be denied in all respects.

The pretext the SEC gives for seeking summary judgment is that Defendants somehow "admitted" they only intended to support the Fund's NAV if they found third-party financing or the government provided a bail-out. This assertion is repeated again and again in the SEC's brief, but no evidence is ever produced showing that Defendants made such an admission. The absence of record support was no oversight. In actuality, Defendants never admitted any such thing. Despite the SEC's heavy-handed efforts to put words in their mouths, Defendants have repeatedly denied that their intent to support the Fund's NAV was conditional.

To cite just one example, when the SEC asked Bent Sr. under oath in November 2008 whether he intended his statement that "'sufficient capital could be made available to support the [P]rimary [F]und'... to be unconditional," his response was: "It was unconditional." (Ex. 2-B, 90:22-91:2.) If it would have been effective to save the Fund's N.A.V., RMCI was prepared to commit the "[t]otal resources that we had available." (Ex. 2-B, 33:18-23.)

As Bent Sr. went on to explain, it was only hours later, when it became clear that the scale of the financial crisis was far worse than anything he or anyone else imagined, that he and Bent II came to the realization that RMCI would not be able to put a viable support agreement in place. They then notified the Fund's counsel, the SEC, and the Board of the change. (Exs. 3-E,

78:7-79:3; 3-CC; 2-J.)  Even though circumstances changed as the crisis unfolded, Bent Sr.'s statement of intent to the Board was true at the time it was made.

What the SEC is now calling "conditions" were in fact extraordinary efforts on the part of Defendants to save Fund investors from incurring a loss.  As financial markets around the world descended into chaos, the Bents' efforts to generate additional liquidity ranged from trying, in effect, to exchange their equity in RMCI for credit support, to asking the government to create liquidity for the Fund's assets (including government paper for which the market had dried up), so that redemptions could be paid.  The SEC's claim that the Bents' subsequent efforts rendered their initial statements of intent "conditional" is wrong – and so is its claim that scienter can be decided *in its favor* on summary judgment.

The law is clear that a defendant cannot be held liable for securities fraud merely for making statements of intent that could not be fulfilled because things unexpectedly went wrong. That is particularly so where, as here, the statements were made in reliance on the advice of qualified counsel, prompt disclosure was given when circumstances changed, and the change was the onset of a worldwide financial crisis.  (See Point II(C)-(D) below.)

Nor is the SEC able to show that it is entitled to the relief it seeks.  For example, in asking for disgorgement, the SEC offers absolutely no proof that Defendants received any ill-gotten gains causally connected to their supposedly wrongful conduct – a fatal evidentiary shortcoming that the SEC attempts to blame on "Defendants' various and conflicting submissions."  (SEC Mem. 37.)  But Defendants made no conflicting submissions, and the SEC produces none.  Defendants neither sought nor received a penny in profits from any of the alleged misconduct.  Their position is backed up by submissions from RMCI's Chief Financial Officer, expert analysis, and a report from KPMG.  (Ex. 5-A.)  For its part, the SEC has never even bothered to conduct discovery on the issue.  Since all the evidence shows that Defendants

- 2 -

received no ill-gotten gains, the SEC cannot possibly sustain its burden on summary judgment of demonstrating any profit causally connected to the alleged violations.

The SEC's request for injunctive relief is just as deficient. Although the SEC is asking for relief which could have severe collateral consequences for Defendants, it has not even made a token effort to meet its burden of producing evidence showing a reasonable likelihood that the alleged wrongdoing will recur. Since the supposed misconduct was limited to an extraordinary period of market turmoil lasting less than 24 hours – and the SEC does not allege that it was preceded or succeeded by any other misconduct – no basis for an injunction can be shown here. The SEC's claims for injunctive and other relief should therefore be dismissed.

As the foregoing deficiencies underscore, the SEC does not merit summary judgment; rather, summary judgment should be granted in Defendants' favor.

### THE SEC'S VERSION OF THE FACTS IS NOT UNDISPUTED

A summary of the facts relevant to this case appears in the memorandum Defendants submitted in support of their own summary judgment motion, a copy of which is included as Exhibit A to Defendants' Opposition Appendix.[1] Defendants' Rule 56.1 Statement provides a point-by-point rebuttal of the SEC's factual recitation. Listed below are only some of the more egregious examples of how the SEC has changed or distorted the facts:

1. *The SEC's Assertion*: *"Back-stopping a fund's NAV through a credit support agreement was a concept the Bents understood well by September 15."* (SEC Mem. 3.)

The Facts: In an effort to prop up its scienter theory, the SEC suggests that the Bents understood how support agreements worked prior to September 15, 2008. They did not. While RMCI had in the past provided support to the Enhanced Cash Fund – an unregistered private

---

[1]   To avoid duplicative submissions, Defendants incorporate by reference the materials filed in support of their summary judgment motion, and limit this submission to additional evidence. As referred to herein, Defendants' Opposition Appendix is "(Opp. Ex.)", the Appendix filed with their summary judgment motion is "(Ex.)", and the SEC's Appendix is "(SEC Ex.)".

vehicle with under 20 investors, which was not subject to the '40 Act – the Bents' experience

with Enhanced Cash gave them no reason to believe that, to support the Primary Fund, the SEC

would require RMCI to quantify in advance the amount of support it was going to provide. Nor

did RMCI's attorneys advise it that it would have to do so, until several hours after the subject

of credit support was discussed at the 1:00 P.M. Board meeting. (Ex. 3 ¶7.)

     2.    <u>The SEC's Assertion</u>: *Bent Sr. "promised" and "pledged" to make sufficient capital available to support the Fund.* (SEC Mem. 12.)

     <u>The Facts</u>: When the subject of a support agreement came up at the 1:00 Board meeting

on September 15, Bent Sr. was asked whether RMCI had sufficient capital to provide credit

support and the minutes indicate his response was that it "could be made available." (Ex. 2-I, p.

4.) The SEC tries to turn this nebulous exchange into a commitment by RMCI to provide $785

million of support. (SEC Mem. 17, 22.) But it is undisputed that no amounts were discussed at

the 1:00 Board meeting. At the time, the Fund did not need any support and, if support were

needed, Bent Sr. believed RMCI had the ability to provide it. (Ex. 2 ¶¶20-21.) While things

may look different in hindsight, Bent Sr. had no reason to assume then that the Lehman paper

was worthless, nor did he know that the Lehman bankruptcy had created a once-in-a-lifetime

crisis, and not just a temporary, self-correcting market aberration. (Ex 2 ¶29.)

     3.    <u>The SEC's Assertion</u>: *The Bents' commitment to support the Fund was limited to $10 million.* (SEC Mem. 5 n. 4.)

     <u>The Facts</u>: The amount of credit support RMCI would provide was not limited to

$10 million. Rather, as the Willkie attorney who prepared the draft support agreement

explained, the $10 million represented RMCI's initial contribution – and Bent Sr. explained that

it could be increased up to the "[t]otal resources" Defendants had available. (Ex. 2 ¶34.)

     4.    <u>The SEC's Assertion</u>: *The $10 million figure used in the draft support documents was never shared with the Board.* (SEC Mem. 5 n. 4.)

     <u>The Facts</u>: The same Willkie attorneys who represented RMCI also represented the

Fund. (Ex. 2-K, 13:18-14:4; 15:2-7.) As Fund counsel, the Willkie attorneys attended all of the

September 15 Board meetings and reported directly to the Trustees. They therefore knew what

the Board was told about supporting the Fund's NAV. And they knew this when they inserted

the $10 million figure in the draft support documents. (Exs. 3-R; 3-T.) Had the Willkie

attorneys thought the amount of support called for in the draft documents was at odds with the

discussion at the 1:00 Board meeting, they would have been expected to say so. Not only did

they say nothing, DiMartino testified that she saw no inconsistency between what the Board was

told and what she thereafter inserted in her draft because she understood that the $10 million was

just an initial contribution which could be increased. (Ex. 2-K, 67:17-25.)

   5.   *The SEC's Assertion: The Bents have conceded that their statements of support
were conditional*. (SEC Mem. 5, 18.)

   The Facts: The Bents have each denied viewing RMCI's intent to support the Fund as

conditional. (SEC Ex. 2, 77:19-78:2; Ex. 2-B, 90:22-91:2.) What the SEC calls "conditions"

were not, in any event, conditions, but sources of capital which the Bents reasonably expected

RMCI to be able to tap into to satisfy redemption requests. (Ex. 3 ¶16.)

   6.   *The SEC's Assertion: "[R]edemptions slowed considerably" after Defendants
said RMCI intended to support the Fund.* (SEC Mem. 3.)

   The Facts: The empirical evidence shows that any statements of intent that actually

reached investors did not dampen their desire to redeem on September 15. Rather, redemption

requests continued unabated for the balance of the day. (Opp. Ex. C ¶¶6-10.)

   7.   *The SEC's Assertion: "Communicating with the rating agencies was one of
Ledford's responsibilities."* (SEC Mem. 11; see also p. 21.)

   The Facts: After the Bents declined to provide Moody's and Standard & Poor's with any

firm commitments on the afternoon of September 15, and set up a time to talk later, the rating

agencies tried to pump Ledford, the CIO, for information. (SEC Ex. 24; Ex. 2-O.) That is not

because it was Ledford's job to communicate with the rating agencies. On the contrary, as the

following telephone conversation between Bent II and Ledford makes clear, Ledford was

directed by Bent II at 10:22 A.M. on September 15 not to speak to the rating agencies, and was

told that the Bents would communicate with Moody's themselves (Opp. Ex. K):

> LEDFORD:    Hey Bruce.  You and your father spoke to Henry
>             Shilling this morning?
>
> BENT II:    Yeah.
>
> LEDFORD:    Yeah.  Did – Any more thought on that because I
>             had – He had –
>
> BENT II:    No.  We're going to talk to him at 5:00.  You don't
>             need, you don't need to do anything.
>
> LEDFORD:    Oh, okay.
>
> BENT II:    We've got it covered.
>
> LEDFORD:    Alright.  Okay.  Thanks, Bruce.

The call in which Ledford allegedly made misrepresentations to Moody's occurred at

2:29 P.M.[2] – four hours after Ledford was told not to do anything because the Bents had "it

covered."  Defendants had no reason to believe Ledford would continue speaking to the rating

agencies.  They also did not expect Moody's to keep calling Ledford for unofficial information

after they spoke to Moody's directly and arranged to do so again later in the day.  Ledford

himself did not purport to be Defendants' spokesman, admitting in a conversation with Moody's

that he was "not necessarily in the loop." (Opp. Ex. L, 9:1.)  While the Moody's representative

has submitted a declaration describing his call with Ledford, he conspicuously avoids claiming

that anything Ledford privately told him affected the Fund's rating.  (SEC Ex. 79.)

The SEC's treatment of Ledford belies its allegations.  It devotes an entire section of its

brief to Ledford's supposed "intentional misrepresentations to Moody's" (SEC Mem. 29), yet it

---

[2]     The SEC wrongly alleges in its Complaint that it was Bent II who made this statement to
Moody's.  (Complt. ¶104.)  It has never sought to correct this error.

never even examined him under oath. Nor did it name him as a defendant or seek any injunctive relief against him, leaving him free to work in the securities industry and preferring to try to tag the higher profile Bents with responsibility for his conduct as "control persons."

      8.    *The SEC's Assertion*: Bent II "instructed the sales team to disseminate" his *message of support for the Fund.* (SEC Mem. 5.)

      The Facts: Bent II never instructed the sales team to disseminate his 1:19 e-mail. He simply told RMCI's sales and marketing managers that his message could be communicated "to clients on an as needed basis." (Ex. 3-L) RMCI's Director of Marketing, Eric Lansky, in turn, assured Bent II that, while he wanted a document to use "in response" to investor calls, "we are not posting anything on the web nor distributing anything proactively." (Ex. 3-Y.) Lansky further instructed RMCI's sales team that Insights was "not to be shared proactively," but rather was only to be referred to in responding to direct inquiries. (Opp. Ex. S.) Bent II thus had every reason to believe that nothing was being shown to investors. While the SEC makes much of the Monday 3:41 P.M. Bonanno e-mail to sales and marketing staff (SEC Ex. 49) describing Insights as "approved," that email was never sent to Bent II. (Opp. Ex. U.)

      9.    *The SEC's Assertion*: Bent II "told Lansky to post [Insights] on Reserve's *website at 9:36 P.M. on the 15th."* (SEC Mem. 8.)

      The Facts: Bent II did not tell Lansky to post anything on the Website and did not approve any postings. Instead, in response to an e-mail in which Lansky said he "[w]ould like to add stmt to website," Bent II wrote "okay, go ahead" – meaning go ahead and prepare a statement for review, as was required for all RMCI web postings. (Ex. 3-BB.) No statement was attached to Lansky's e-mail, and Bent II testified that he did not understand Lansky to be seeking approval to post Insights on the Website. (Ex. 3 ¶39.)

      10.    *The SEC's Assertion*: "[N]obody ever told the Fund's sales force to stop *spreading the news of RMCI's 'intent to support the Fund.'"* (SEC Mem. 9.)

      The Facts: Insights was mistakenly posted on the Website at 8:15 A.M. on September

16, and removed less than three hours later. (Ex. 4 ¶22.) RMCI's General Counsel thereafter
advised Drahzal, RMCI's Director of Sales, to stop referring to Insights. (Opp. Ex. J.) Drahzal,
in turn, instructed the sales staff to stop using Insights, and he has testified that his staff did just
as instructed. (Opp. Ex. I, 243:20-244:8.) Although both Willkie and the SEC knew Insights
had appeared on the Website, neither advised Defendants to issue a correction. In fact, Goldberg
told them to say nothing. (Exs. 3-F, 125:22-127:24; 3-FF, 185:23-186:17; 3-C.)

Once the Bents told the Board that a support agreement would not be viable early on
September 16, communicating with investors was in the hands of the Independent Trustees, and
they determined the timing of the Fund's ultimate press release. (Ex. 3 ¶47.)

11.    *The SEC's Assertion: State Street stopped funding redemption requests at noon
on September 15.* (SEC Mem. 12.)

The Facts:  Despite having been provided with complete redemption data during the
investigative phase of this case, the SEC erroneously and repeatedly alleged in its Complaint that
State Street stopped funding redemptions at 10:10 A.M. on September 15. (Complt. ¶¶9, 61,
101.) In denying Defendants' motion to dismiss, the Court, which was required to treat the
SEC's allegations as true, attached significance to this allegation. SEC v. Reserve Mgmt. Co.,
732 F. Supp. 2d 310, 315 (S.D.N.Y. 2010).  The SEC now says State Street stopped funding
redemptions at noon – two hours later than the Complaint alleges. Even its "corrected" claim is
wrong. As is clear from documentary evidence that has long been in the SEC's possession, State
Street funded redemptions until 5:28 P.M. on September 15, including redemptions requested as
late as 1:24 P.M., which was after the 1:00 Board meeting and before any communication with
investors about supporting the Fund's NAV. (Ex. 4 ¶2; Ex. 4-A.)

12.    *The SEC's Assertion: "[O]nce the rating agencies received the assurances of
support that Defendants provided ..., neither put the Primary Fund on credit watch or
downgraded its ratings."* (SEC Mem. 11.)

The Facts:  Without acknowledging the irony, the SEC offers declarations from Moody's

and Standard & Poor's – entities the Financial Crisis Inquiry Commission called "essential cogs in the wheel of financial destruction" that led to the Fund's collapse. (Opp. Ex. W at xxv.) Moody's and Standard & Poor's hint in their declarations (but are careful not to say) that they would have downgraded the Fund's rating earlier than they did had they not waited to see a draft of RMCI's proposed support agreement. The evidence does not bear them out.

Moody's and Standard & Poor's maintained their A1/P1 ratings for Lehman paper until after Lehman filed for bankruptcy, and they did not act with any greater dispatch in downgrading the Fund: Moody's did not downgrade the Fund's rating until September 17 – the day after the Fund broke the buck. (SEC Ex. 79 ¶20.) Likewise, Standard & Poor's was still only threatening a downgrade nearly an hour after the Fund broke the buck. (SEC Ex. 80 ¶16.) More to the point, there is no evidence to support the SEC's implied theory that Defendants somehow strung the rating agencies along. Both rating agencies insisted on seeing a draft of the support agreement. (Ibid.; SEC Ex. 79 ¶15.) The reason they did not receive a draft on September 15 was because the Fund's attorney, DiMartino (who had been waiting for the SEC to provide a sample), took until 7:16 P.M. to prepare her first draft. (Ex. 3-T.)

There is, moreover, good reason to doubt the veracity of the declarations. The Moody's representative, Shilling, says in his declaration that he was unable to reach any of Bent Sr., Bent II, and Ledford on September 16 (SEC Ex. 79 ¶19), but Bent II's telephone records show that Bent II placed a call to Shilling's direct line (553-1948) at 11:29 A.M. on September 16, which lasted almost 5 minutes. (Ex. 3-A, p. 187439.) Shilling did not call again until after the Fund announced it had broken the buck. Likewise, the Standard & Poor's declarant implies he could not reach anyone from RMCI on September 16 (SEC Ex. 80 ¶15), but Bent II's records show a 5:24 P.M. call that day from Rizzo lasting over 15 minutes. (Ex. 3-A, p. 187441.)

13.     _The SEC's Assertion:_ Bent II "_personally authorized the Reserve's statement to the Wall Street Journal._" (SEC Mem. 9; see also p. 27.)

The Facts:  The SEC's argument is, at best, an irrelevancy: the *Journal* never actually published anything saying that RMCI intended to support the Fund.  A statement that is never communicated to investors is not actionable under the securities laws.

## ARGUMENT

### I. THE SEC CANNOT SUSTAIN ITS SUMMARY JUDGMENT BURDEN

The Second Circuit has held that a party moving for summary judgment "'bears a heavy burden of demonstrating the absence of any material issues of fact.'"  Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, 182 F.3d 157, 160 (2d Cir. 1999).  To carry its "initial burden," the movant must "come forward with evidence on each material element of [its] claim or defense, thus demonstrating that [it] is entitled to relief."  Ernest Lawrence Group v. Mktg. the Ams., Inc., 2005 U.S. Dist. LEXIS 25307, *10 (S.D.N.Y. Oct. 26, 2005).  Where the plaintiff is the party who is seeking summary judgment, it "bears a much greater initial burden; it must show that the evidence supporting its claims is so compelling that no reasonable jury could return a verdict for the defendant."  SEC v. Meltzer, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006).

"[T]he district court may not only rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion."  Vt. Teddy Bear Co., Inc. v. 1-800 BEARGRAM Co., 373 F.3d 241, 244 (2d Cir. 2004).  "[O]nly admissible evidence may be considered."  In re Parmalat Sec. Litig., 659 F. Supp. 2d 504, 516 (S.D.N.Y. 2009).

A court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the non-moving party."  Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995).  "Credibility determinations, the weighing  of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."

- 10 -

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Gauged by these standards, the

SEC's motion must denied.

## II.  THE SEC HAS NOT COME CLOSE TO SHOWING THAT
IT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW
ON ITS CLAIMS UNDER SECTIONS 10(b) and 17(a)

The SEC cannot prevail on its claims under §§10(b) of the Exchange Act and 17(a) of the

Securities Act without establishing that Defendants "(1) made a material misrepresentation or a

material omission as to which [they] had a duty to speak, or used a fraudulent device; (2) with

scienter; (3) in connection with the purchase or sale of securities."  SEC v. Monarch Funding,

192 F.3d 295, 308 (2d Cir. 1999).[3]  Although the SEC "must prove every element of its claim,"

SEC v. Rorech, 720 F. Supp. 2d 367, 404 (S.D.N.Y. 2010), here it has failed to come forward

with evidence on any of these elements sufficient to establish that no reasonable juror could find

for Defendants.  This requires the denial of its motion.

A.    The SEC Cannot Establish the "In Connection With" Element of Its Claims

The SEC does not seem to know what to say about the "in connection with the purchase

or sale" of a security element of its claims.  Its one-paragraph discussion of this amounts to little

more than a place holder which ignores the two reasons why it cannot establish this element as a

matter of law:  (1) statements to a Board are not "in connection with" the purchase or sale of a

security; and (2) statements designed to induce investors to hold their securities do not satisfy the

"in connection with" requirement.

1.    Representations to the Board Are Not Actionable Under §§10(b) and 17(a).

Section 10(b) only deals with "conduct designed to deceive or defraud investors."  Ernst & Ernst

v. Hochfelder, 425 U.S. 185, 199 (1976).  Realizing that its investor-based claims are especially

weak, the SEC has tried to bulk up its case by also alleging Board misstatements.  (See SEC

---

[3]     Unless otherwise indicated, citations are omitted and the emphasis is in the original.

Mem. 15.)  Representations to the Board are not, however, actionable under §§10(b) and 17(a).

TCS Capital Mgmt., LLC v. Apax Partners, L.P., 2008 U.S. Dist. LEXIS 19854, *52 (S.D.N.Y.

Mar. 7, 2008) ("the issue under the federal securities laws is whether [investor] was defrauded,

not whether the Board was defrauded"); Golar v. Daniels & Bell, Inc., 533 F. Supp. 1021, 1027

(S.D.N.Y. 1982) (claim that certain directors failed to make full disclosure to disinterested

directors did not state a claim under §10(b) because §10(b) requires "conduct in connection with

the purchase or sale of a security" and "there simply is no requisite securities transaction"); see

also Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir. 1998) (securities fraud requires

communication of misstatement to investors).

 To the extent that the SEC is trying to base its §§10(b) and 17(a) claims on alleged

misrepresentations to the Board, it cannot satisfy the "in connection with" requirement.  Thus,

the parties entitled to summary judgment are Defendants – not the SEC.

 2. Statements Intended to Induce Investors Not to Redeem Are Not "In Connection

With" the Purchase or Sale of a Security.  As Defendants explained in their own summary

judgment motion, statements allegedly intended to induce investors not to redeem are not "in

connection with" the purchase or sale of a security, and are not actionable under §§10(b) and

17(a).  Rather than repeat the same explanation here, we incorporate it by reference.  (Opp. Ex. A

p. 18.)  SEC v. Northshore Asset Mgmt., 2008 U.S. Dist. LEXIS 36160, *27 (S.D.N.Y. May 5,

2008) (summary judgment granted dismissing SEC's claim that defendant committed fraud by

inducing investor not to redeem, holding "[t]his is insufficient to demonstrate the 'in connection

with a purchase or sale' requirement").  This also applies to statements that allegedly induced an

investor not to transfer to another Reserve Fund and to continue holding Fund shares.

 Thus, for the same reasons this Court should dismiss the SEC's claims that Defendants

committed securities fraud by inducing investors not to redeem, the SEC cannot satisfy the "in

connection with" element of its claims under §§10(b) and 17(a).

      3.     The SEC's Evidence of Purchases Is Improper and Does Not Satisfy the "In Connection With" Requirement. Implicitly recognizing that its Complaint was fundamentally flawed because it was all about inducing investors not to redeem, the SEC has now managed to drum up declarations from four previously unidentified investors, all of whom claim a purchase on September 15 or 16. Even if these declarations are considered – and, for the reasons set forth in Defendants' motion to preclude, they should not be – they do not help the SEC.

      "To satisfy the 'in connection with' requirement, ... more than a purchase is required. That is, there must be a causal connection between a defendant's misstatements or omissions and the plaintiff's purchase." Troyer v. Karcagi, 476 F. Supp. 1142, 1148 (S.D.N.Y. 1979), citing, inter alia, SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 860 (2d Cir. 1968)); Abrash v. Fox, 805 F. Supp. 206, 208 (S.D.N.Y. 1992) (same). Here, none of the declarations establish the requisite causal connection between the alleged misstatements and a subsequent purchase.

      Indeed, two of the four declarants do not claim to have received any statement about credit support. Brian Moore of Fidelity National Financial, Inc. only claims that, when he called RMCI on September 16, he "was told that the Primary Fund had received significant redemption requests the prior day and that they had experienced difficulty in processing the volume of the requests" (which, in fact, is what happened), following which he authorized a purchase. (SEC Ex. 81, ¶5) And John Boyd of Supervalu, Inc. offers only undisguised speculation: "I was out of contact with Supervalu's offices ... through Wednesday, September 17, 2008. However, had I been in the office and had S&P or Moody's issued such an alert prior to Supervalu's investment in the Primary Fund on September 15, 2008, I would not have approved that investment." (SEC Ex. 82, ¶6) There is no causal connection there either.

      Brian Gamble of Henry Ford Health Systems, in turn, claims that at around 9:30 A.M on

- 13 -

the morning of September 16, "we were assured by Elliott Goldstein that ... RMCI ... would

stand behind the Primary Fund to protect its NAV, and at 9:35 A.M. Mr. Goldstein emailed us a

copy of the Insights publication providing substantially identical assurances." (SEC Ex. 84, ¶2)

RMCI's records show that the only purchase Henry Ford made on either of those two days was

at 11:15 A.M. on September 15 – almost a full day before Henry Ford was told of possible credit

support.  This, too, does not satisfy the "in connection with" requirement.  Freschi v. Grand Coal

Venture, 551 F. Supp. 1220, 1227 (S.D.N.Y. 1982) ("there can be no causal connection where

the alleged misrepresentation or omission occurred after the purchase").

      That leaves only the declaration of Tracy Reeg of Principal Financial Group, Inc.[4]

Reeg claims that at 7:01 P.M. on September 15 one of its analysts received a copy of Insights by

e-mail and, "as a result," decided to purchase $41.2 million Fund shares on September 16.  (SEC

Ex. 83, ¶7).  Principal is the only investor the SEC has identified as having seen Insights and

then making a purchase.  If the SEC wants to base its whole case on this investor, it will still

have to demonstrate materiality, which is addressed below.

B.     The SEC Cannot Establish A Material Misstatement

      The SEC's discussion of materiality is basically boilerplate.  Whether information about

a company's financial condition might be important to investors under other circumstances,

nothing Defendants supposedly said after 1:24 P.M. on September 15 was material here because

an appreciable number of investors could not have used the information once State Street

stopped funding new redemption requests.  Feit v. Leasco Data Processing Equip. Corp., 332

F. Supp. 544, 571 (S.D.N.Y. 1971) (no materiality unless "a rational connection exists between

its disclosure and a viable alternative course of action by any appreciable number of investors").

---

[4]     The SEC did not identify Principal as a witness, except as a group of 90,000 Fund
investors.  Defendants thus had no opportunity to depose Principal.  If Principal's declaration is
not precluded, Defendants should be allowed to depose Principal under Fed. R. Civ. P. 56(d).

This point is discussed more fully in Defendants' own summary judgment motion, which is incorporated herein by reference. (See Opp. Ex. A, pp. 20-23.)

If the alleged misstatements were not immaterial as a matter of law, materiality would raise an issue of fact. As the court pointed out in SEC v. Biovail Corp., 2010 U.S. Dist. LEXIS 59700, **7-8 (S.D.N.Y. June 16, 2010), "summary judgment on the issue of materiality may be inappropriate even when the material facts are undisputed as those facts are 'merely the starting point' for the 'delicate assessment of the inferences a reasonable shareholder would draw from a given set of facts and the significance of those inferences to him.'"

In this case, a reasonable juror could conclude that statements of intent describing what RMCI was planning to do, but had not yet done, were immaterial. Until RMCI obtained SEC approval and implemented a support agreement, investors would have understood there to be no assurance the Fund's NAV would remain at $1.00. Biovail, supra, *10 (unclear whether alleged misstatements were material where "surrounded by other statements indicating that the results were preliminary and subject to revisions"); Meltzer, supra, 440 F. Supp. 2d at 190 ("Materiality is a 'fact-specific inquiry,' and a 'relative concept, so that a court must appraise a misrepresentation or omission in the complete context in which the author conveys it'").

And that is what in fact happened. In September 2008, the Fund had approximately 90,000 investors. Now, years later, the SEC has identified only one investor who purports to have seen the alleged misstatement prior to purchasing. By contrast, during those same two days, over two thousand investors requested redemptions – and the pace at which they did so was unaffected by anything Defendants said. (Opp. Ex. C ¶¶6-10.) Based on this investor behavior alone, a reasonable juror could conclude that the alleged misstatements were immaterial. The SEC thus cannot establish materiality.

- 15 -