UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RESERVE MANAGEMENT COMPANY, INC.,

                    Plaintiff,

      v.

WILLKIE FARR & GALLAGHER LLP,
ROSE F. DIMARTINO,

                    Defendants.

**ECF CASE**

**MEMORANDUM
OPINION & ORDER**

11 Civ. 7045 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Reserve Management Company ("RMCI") filed this legal malpractice

action on September 16, 2011, in the Supreme Court of the State of New York, New York

County.  (Dkt. No. 1 (Notice of Removal) Ex. 1)  On October 6, 2011, Defendants Willkie Farr

& Gallagher LLP ("Willkie") and Rose DiMartino removed this action to federal court, asserting

that this Court has original jurisdiction over this matter under 28 U.S.C. § 1331, because it

"aris[es] under the Constitution, laws or treaties of the United States."  (Dkt. No. 1 (Notice of

Removal) at 1)  RMCI now moves to remand this action to state court.  For the reasons stated

below, Plaintiff's motion to remand will be denied.

## BACKGROUND

        Plaintiff RMCI served as the investment advisor for the Reserve Primary Fund

("the Fund"), a money market fund that, prior to September 2008, held approximately $62.5

billion in assets.  (Cmplt. ¶ 2)  From July 2002 through September 2008, Willkie provided legal

advice to RMCI and the Fund concerning the Investment Company Act of 1940 and other

matters.  (Id. ¶ 23)  Defendant Rose DiMartino, a Willkie partner, had "day-to-day responsibility

for counseling and advising RMCI and its principals."  (Id. ¶ 11)

The current dispute between RMCI and Willkie has its root in the September 2008 bankruptcy of Lehman Bros., which led to the rapid collapse of the Fund.  At the time Lehman announced its intention to file a bankruptcy petition, the Fund held $785 million in Lehman commercial paper.  (Id. ¶¶ 2, 39)  Lehman's announcement led to a run on the Fund, with "investors . . . submitting redemption requests in massive numbers."  (Id. ¶ 39)

RMCI's malpractice complaint presents two broad theories of liability.  The first is that – at the time of Lehman's bankruptcy – Willkie provided incompetent advice to RMCI that has led the firm, two of its principals – Bruce Bent, Sr. and Bruce Bent II – and a related entity to become the subject of an SEC enforcement action:

> Based on the Willkie firm's advice, RMCI took certain actions on September 15-16, 2008 for which the SEC now seeks to hold it and the Bents liable under the federal securities laws.  Among other things, the Willkie firm, on behalf of RMCI, prepared a draft no-action letter and credit support agreement that the SEC has made the centerpiece of its case against RMCI and the Bents.  Specifically, the SEC alleges that such documents contained a material limitation not found in RMCI's statements to investors and the Fund's Board of Trustees made earlier that day – statements of which Willkie was fully aware when it prepared those draft papers and advised RMCI that they were compliant and proper.  In sum, the SEC is seeking to hold RMCI and the Bents liable for actions taken by the Willkie firm.

(Id. ¶ 42)  The Complaint further alleges that – but for the negligent legal advice Willkie gave RMCI in September 2008 – RMCI would not have been sued by the SEC or by private parties, and would not have incurred millions of dollars in attorneys' fees and other defense expenses.  (Id. ¶¶ 3, 5, 45)

In the SEC enforcement action, which is also pending before this Court, the Commission alleges that RMCI, the Bents, and the distributor for the funds managed by RMCI – Reserv Partners, Inc. – violated various provisions of the federal securities laws when they "engaged in a systematic campaign to deceive the investing public into believing that the

Primary Fund . . . was safe and secure despite its substantial Lehman holdings."[1]  (09 CV 4346

Cmplt. ¶ 1; see also Cmplt. ¶ 42)

The malpractice complaint's second theory of liability against Willkie is that the

firm's simultaneous representation of RMCI and the Fund presented a conflict of interest that the

firm never disclosed to RMCI and that has caused significant prejudice to RMCI.  (Cmplt. ¶¶ 22-

28)  The relationship between the Fund and RMCI is governed by a Comprehensive Fee

Investment Management Agreement dated June 26, 2007 and amended on July 16, 2007,

September 13, 2007, and February 13, 2008, and renewed in September 2008 ("the Management

Agreement").  (Id. ¶ 20)  The malpractice complaint alleges that

> [t]he Willkie firm never advised RMCI . . . with respect to the risks of dual representation
> in connection with the negotiation, execution, amendment, and renewal of the
> Management Agreement.  Nor did it ever recommend to RMCI that it should at least
> obtain separate counsel to represent its interests with respect to the negotiation of the
> Management Agreement.

(Id. ¶ 30)

The Management Agreement provides that "RMCI shall not have any liability to

the Fund arising from the provision of its investment management services except in the case of

willful malfeasance, bad faith, or gross negligence."  (Id. ¶ 31)  However, "the Management

Agreement contains no provision expressly requiring the Fund to indemnify RMCI for losses

arising from claims by third parties, or to advance and indemnify RMCI for its attorneys' fees in

defending such actions. . . ."  (Id. ¶ 32)  RMCI claims that Willkie never advised it to request that

indemnification and advancement of fees provisions be included in the Management Agreement,

---

[1]  In addition to the SEC enforcement action, numerous class actions have been consolidated
before this Court pursuant to an order issued by the Panel on Multi-District Litigation.  See Dkt.
Nos. 08cv8060; 08cv9387, 09cv1288, 09cv7054.

and that had such provisions been requested by RMCI, the Fund would have agreed to include

them.[2]  (Id. ¶ 6)

        RMCI further claims that Willkie's failure to properly advise RMCI concerning

these issues

> emanated in whole or in part from a conflict of interest stemming from its simultaneous
> representation of both RMCI and the Fund.  The Willkie firm never advised RMCI about
> the risks of such dual representation, nor that it would be less than zealous in seeking full
> protection for RMCI from its other client, the Fund, when negotiating their management
> agreement – a transaction in which the two clients had divergent interests.

(Id. 7)  The Complaint goes on to allege that "had the Willkie firm properly advised RMCI, the

millions of dollars in attorneys' fees it has incurred and will continue to incur in defense of the

SEC action would have been advanced and/or reimbursed by the Fund."  (Id. ¶ 6; see also id.¶ 47

("If RMCI had obtained express contractual indemnification rights, then once it obtained a

judgment in its favor in the SEC action, RMCI would be able to recoup forthwith from the Fund

the attorneys' fees and other costs it has incurred.").

## DISCUSSION

## I.    LEGAL STANDARD FOR REMOVAL

        "On a motion to remand, the party seeking removal bears the burden of

establishing to a 'reasonable probability' that removal is proper."  Anwar v. Fairfield Greenwich

Ltd., 676 F. Supp. 2d 285, 292 (S.D.N.Y. 2009).  "Any doubts regarding the propriety of

removal are resolved in favor of remand, and 'federal courts construe the removal statute

narrowly.'"  Id. (quoting Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994)).

Generally, removal is proper if an action originally filed in state court could have been filed in

federal court.  See 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the

---

[2]  RMCI alleges that "[s]uch provisions – indemnification and advancement [of fees] – are
utilized within the money market fund industry."  (Id. ¶ 34)

district courts of the United States have original jurisdiction, may be removed by the defendant

or the defendants, to the district court of the United States for the district and division embracing

the place where such action is pending."). Absent diversity of citizenship,[3] removal is proper

"when a federal question is presented on the face of the plaintiff's properly pleaded complaint."

See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).

    "As a general proposition, '[a] suit arises under the law that creates the cause of

action.'" Nazzaro v. Balber, No. 05 Civ. 2172(CSH), 2005 WL 1251785, at *3 (S.D.N.Y. May

25, 2005) (quoting Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916)).

However, original federal jurisdiction is present when "it appears that some substantial, disputed

question of federal law is a necessary element of one of the well-pleaded state claims, or that one

or the other claim is 'really' one of federal law." Franchise Tax Bd. v. Constr. Laborers

Vacation Trust, 463 U.S. 1, 13 (1983). "Federal jurisdiction in these circumstances is predicated

on 'the presence of a federal issue in a state-created cause of action.'" D'Alessio v. New York

Stock Exchange, Inc., 258 F.3d 93, 99 (2d Cir. 2001) (quoting  Merrell Dow Pharms. Inc. v.

Thompson, 478 U.S. 804, 810 (1986)).

    While "the mere presence of a federal issue in a state cause of action does not

automatically confer federal-question jurisdiction," Merrell Dow, 478 U.S. at 813, "a case is

deemed to 'arise under' federal law 'where the vindication of a right under state law necessarily

turn[s] on some construction of federal law.'" D'Alessio, 258 F.3d at 99 (quoting Franchise Tax

Bd., 463 U.S. at 9). "Consequently, in cases where 'state law creates the cause of action, [courts]

ask[ ] whether that cause of action poses a substantial federal question.'" Id. (quoting W. 14th

St. Commercial Corp. v. 5 W. 14th Owners Corp., 815 F.2d 188, 192 (2d Cir.1987)).

---

[3]  No party contends that diversity jurisdiction exists here.  (See Cmplt. ¶¶ 9-11)

The determination of whether a claim "arises under" federal law is "determined by reference to the 'well-pleaded complaint.'" Merrell Dow, 478 U.S. at 808 (quoting Franchise Tax Bd., 463 U.S. at 9-10).  The well-pleaded complaint rule dictates that a federal question must appear on the face of the plaintiff's properly pled complaint.  "This rule enables the plaintiff to be the 'master of the claim' and permits plaintiff to avoid federal jurisdiction by exclusively relying on state law."  Panizza v. Mattel, Inc., No. 02 Civ. 7722(GBD), 2003 WL 22251317, at *2 (S.D.N.Y. Sept. 30, 2003) (citing Caterpillar, Inc., 482 U.S. at 392).  Plaintiffs are limited only by the artful pleading doctrine – "an independent corollary of the well-pleaded complaint rule" – which prevents a plaintiff from defeating federal jurisdiction by "omitting to plead necessary federal questions in a complaint."  Franchise Tax Bd., 463 U.S. at 22.  Federal jurisdiction may not be premised on the assertion of a federal defense, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is [essential to adjudication of the claims]."  Id. at 14.

Courts assessing grounds for removal "'must make principled, pragmatic decisions, engaging in a selective process which picks the substantial causes out of the web and lays the other ones aside.'"  Fin. and Trading, Ltd. v. Rhodia S.A., No. 04 Civ. 6083(MBM), 2004 WL 2754862, at *6 (S.D.N.Y. Nov. 30, 2004) (quoting Barbara v. New York Stock Exch., Inc., 99 F.3d 49, 54 (2d Cir. 1996)).  With respect to whether a plaintiff's right to relief for a state law claim necessarily depends on resolution of a substantial question of federal law, the following legal standard applies:

> [T]he question is, does a state-law claim necessarily raise a stated
> federal issue, actually disputed and substantial, which a federal
> forum may entertain without disturbing any congressionally
> approved balance of federal and state judicial responsibilities.

Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).

Grable creates only a "special and small," "slim category" of cases that may be appropriately removed to federal court. Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 699, 701 (2006). Indeed, the "mere presence" of a federal issue does not create federal jurisdiction over a state claim. Ins. Corp. of New York v.. Monroe Bus Corp., 491 F.Supp.2d 430, 434 (S.D.N.Y. 2007) (citing Merrell Dow Pharms. Inc., 478 U.S. at 808, 813-14). Nor is the assertion of a federal interest enough to warrant the exercise of federal jurisdiction. Empire Healthchoice Assur., Inc., 547 U.S. at 701. Under Second Circuit precedent, a federal issue is substantial if it "involve[s] aspects of [a] complex federal regulatory scheme . . . as to which there is 'a serious federal interest in claiming the advantages thought to be inherent in a federal forum.'" Broder v. Cablevision Systems Corp., 418 F.3d 187, 195 (2d Cir. 2005) (quoting Grable, 545 U.S. at 313).

A single claim over which federal-question jurisdiction exists is sufficient to allow removal. Id. at 194 (citing Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005)). "Where a federal issue is present as only one of multiple theories that could support a particular claim, however, this is insufficient to create federal jurisdiction." Id. (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 807-09, 811-13 (1988)). "The question is whether at least one federal aspect of [the plaintiff's] complaint is a logically separate claim, rather than merely a separate theory that is part of the same claim as a state-law theory." Id.

## II.   ELEMENTS OF LEGAL MALPRACTICE AND "BUT FOR" CAUSATION

To establish legal malpractice under New York law, a plaintiff must show: "'(1) a duty, (2) a breach of the duty, and (3) proof that actual damages were proximately caused by the breach of the duty.'" Kirk v. Heppt, No. 05 Civ. 9977, 2009 WL 2870167, at *9 (S.D.N.Y.

Sept. 3, 2009) (quoting <u>Tinelli v. Redl</u>, 199 F.3d 603, 606 (2d Cir. 1999) (quotations and citation

omitted)).

        As to proximate cause,

> a plaintiff "must show that but for the attorney's negligence, he or she
> would have prevailed in the underlying action or would not have sustained
> any damages." <u>Nobile [v. Schwartz]</u>, 265 F. Supp. 2d [282,] 289
> [(S.D.N.Y. 2003)].  The causation requirement is a "high bar to attorney
> malpractice liability" and "seeks to insure a tight causal relationship exists
> between the claimed injuries and the alleged malpractice." <u>Flutie Bros.</u>
> <u>LLC v. Hayes</u>, No. 04 Civ. 4187 (DAB), 2006 WL 1379594, at *5
> (S.D.N.Y. May 18, 2006) (internal quotations and citation omitted).  "[T]o
> establish the elements of proximate cause and actual damages, where the
> injury is the value of the claim lost, the client must meet the 'case within a
> case' requirement, demonstrating that 'but for' the attorney's conduct the
> client would have prevailed in the underlying matter or would not have
> sustained any ascertainable damages." <u>Weil, Gotshal & Manges, LLP v.</u>
> <u>Fashion Boutique of Short Hills, Inc.</u>, 10 A.D.3d 267, 780 N.Y.S.2d 593,
> 596 (App. Div. 2004); <u>see</u> <u>Littman Krooks Roth Ball, P.C. [v. New Jersey</u>
> <u>Sports Prod., Inc.</u>, No. 00 Civ. 9419], 2001 WL 963949, at *3 [(S.D.N.Y.
> Aug. 22, 2001)] (holding that proximate causation "requires the trier of
> fact . . . [to] decide a lawsuit within a lawsuit, because it demands a
> hypothetical reexamination of the events at issue absent the alleged
> malpractice."

<u>Kirk</u>, 2009 WL 2870167, at *9; <u>see also</u> <u>Nazarro v. Balber</u>, No. 05 Civ. 2172(CSH), 2005 WL

1251785, at *4 (S.D.N.Y. May 25, 2005) ("[A] legal malpractice cause of action is subject to

dismissal where the complaint fails to set forth the requisite allegation, that 'but for' the

attorneys' alleged malpractice, the plaintiff would not have sustained some actual ascertainable

damages.").

## III.    <u>Analysis</u>

        Defendants contend that both of the principal theories of liability in the

malpractice complaint – incompetent advice in connection with the fallout from Lehman's

bankruptcy and the failure to seek indemnification provisions in the Management Agreement –

present "substantial federal question[s] under the Exchange Act and Advisers Act . . . over which the federal courts have exclusive jurisdiction. (Def. Opp. Br. 5-6)

As to Plaintiff's claim regarding indemnification provisions, RMCI will be required to prove – in order to demonstrate causation – that it did not violate the Federal securities laws. If RMCI violated the Exchange Act or the Advisers Act – as is alleged in the SEC action – then it would not be entitled to indemnification from the Fund, even if it had a contractual right to indemnification. See 15 U.S.C. § 80a-17(i) (prohibiting funds from indemnifying investment advisers against liabilities arising from "willful malfeasance, bad faith, or gross negligence").

RMCI's malpractice claim concerning indemnification provisions thus triggers the "case within a case requirement" discussed in Kirk. See 2009 WL 2870167, at *9. In order to show that Willkie's failure to negotiate an indemnification clause has caused damage to RMCI, RMCI must demonstrate that it would be entitled to indemnification – that "'but for' the attorney's conduct the client . . . would not have sustained any ascertainable damages." Fashion Boutique of Short Hills, Inc., 10 A.D.3d at 272. Accordingly, in order to satisfy the causation element of its indemnification-related malpractice claim against Willkie, RMCI must show that it did not violate the Federal securities laws.

Although RMCI argues that any issue of federal securities law violations is not an element of its claim but rather an affirmative defense to be raised by Defendants (Pltf. Reply Br. at 4), RMCI must prove – as an element of its prima facie case – that it suffered a compensable loss that was proximately caused by Willkie's breach of its duty. See Kirk, 2009 WL 2870167, at *9 ("With respect to proximate causation, a plaintiff 'must show that but for the attorney's negligence, he or she would have prevailed in the underlying action or would not have sustained

9

any damages.'") (quoting <u>Nobile</u>, 265 F.Supp.2d at 289).  RMCI implicitly recognizes this in the

Complaint, in which it repeatedly pleads that it did not commit any securities law violations.

<u>See, e.g.</u>, Complt. ¶ 43 ("RMCI believes that it and the other defendants in the SEC Action acted

in compliance with all federal securities laws on September 15-16, 2008 and otherwise."); ¶ 47

("If RMCI had obtained express contractual indemnification rights, <u>then once it obtained a</u>

<u>judgment in its favor in the SEC action</u>, RMCI would be able to recoup forthwith from the Fund

the attorneys' fees and other costs it has incurred." (emphasis added)); ¶ 3 ("[T]he SEC's

allegations are without merit.").  In sum, to prove the proximate cause element of its malpractice

claim, RMCI must show that it did not violate the federal securities laws and thus would be

entitled to indemnification under the provision RMCI claims that Willkie should have

negotiated.[4]

RMCI's incompetent advice theory of liability will also require it to demonstrate

that it did not violate the federal securities laws.  As discussed above, RMCI claims that "the

SEC is seeking to hold RMCI and the Bents liable for actions <u>taken by the Willkie firm</u>" –

specifically, a no-action letter and credit support agreement drafted by the firm.  (Cmplt. ¶¶ 42-

43).  In order to demonstrate that it would not have "incur[red] expense in connection with the

defense of the SEC's investigation and subsequent suit" "but for" Willkie's "negligent legal

services," (Cmplt. ¶ 43), RMCI will be required to demonstrate that it committed no other federal

securities law violations that would have been likely to provoke the SEC's enforcement action.

---

[4]  RMCI'S claim that "all issues related to the securities laws will be definitively resolved in the
pending SEC action" (Pltf. Reply Br. at 1; <u>see also</u> Pltf. Br. at 9-10) is both not necessarily true
and, in any event, irrelevant.  If this case proceeds to a jury verdict, there will be a determination
as to the securities law violations the SEC has pleaded against RMCI.  The case may end in a
settlement, however, in which case there would be no findings.  More importantly, the issue at
this stage is whether removal was proper, and whether RMCI's "state-law claim necessarily
raise[s] a stated federal issue, actually disputed and substantial."  <u>Grable</u>, 545 U.S. at 314.  For
the reasons discussed above, the Court determines that it does.

Plaintiff's argument that "the issues for determination [in the SEC action] do not involve the resolution of significant questions of law, but rather a primarily fact-specific inquiry that turns on familiar questions of mens rea" (Pltf. Br. at 10) is frivolous. The question of whether Defendants have violated the federal securities laws presents a number of hotly disputed legal issues, including what misstatements and omissions may form the basis for a claim under Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act of 1933. See, e.g., 09 CV 4346 Dkt. Nos. 378, 392 (motions for summary judgment), 465, 479 (motions in limine)).

Moreover, given the comprehensive federal securities regime, and the fact that Congress has granted federal courts exclusive jurisdiction over federal securities law actions, there is a strong federal interest in the federal securities law issues raised in RMCI's malpractice complaint. See D'Alessio, 258 F.3d at 104 ("'The comprehensive scheme of statutes and regulations designed to police the securities industry is indicative of a strong federal interest.'") (quoting Friedlander v. Troutman, Sanders, Lockerman & Ashmore, 788 F.2d 1500, 1504 (11th Cir. 1986)); see also New York City Health and Hosps. Corp., v. Wellcare of New York, 769 F.Supp. 2d 250 at 257 (S.D.N.Y. 2011) (federal question was "substantial" because it "implicate[d] the complex reimbursement schemes created by Medicare) (citing Broder, 418 F.3d at 195). In sum, RMCI's legal malpractice claims "necessarily raise a stated federal issue, actually disputed and substantial." Grable, 545 U.S. at 314.

As to the third prong of Grable, this Court may entertain this case "without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. As noted above, Congress has given the federal courts exclusive jurisdiction over the Federal securities laws. See, e.g., 15 U.S.C. § 78aa. There is a strong federal interest in the adjudication of federal securities law claims in federal court because securities are regulated by a federal

agency.  Cf. Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P., 504 F.3d

1262, 1272 (Fed. Cir. 2007) (noting "strong federal interest in the adjudication of patent

infringement claims in federal court because patents are issued by a federal agency").  Moreover,

there is no reason to believe that the exercise of federal jurisdiction here would "open the

floodgates" to federal courts or otherwise "interfere with the 'normal currents of litigation.'"

WellCare, 769 F.Supp. 2d at 258 (quoting Grable, 545 U.S. at 318).

    Courts' treatment of legal malpractice cases in the patent context supports this

Court's conclusion that the exercise of federal jurisdiction here is proper.  As with the federal

securities laws, federal courts have exclusive jurisdiction over patent laws.  See 28 U.S.C.

§ 1338(a).  The exercise of federal jurisdiction has been found proper where a legal malpractice

claim requires a showing that a plaintiff would have succeeded in obtaining damages for patent

infringement but for counsel's negligent advice.  See USPPS, Ltd. v. Avery Dennison Corp., 647

F.3d 274, 281-82 (5th Cir. 2011) (finding exercise of federal jurisdiction proper where legal

malpractice claim would require deciding issues of patent law); Warrior Sports, Inc. v. Dickinson

Wright, P.L.L.C., 631 F.3d 1367, 1372 (Fed. Cir. 2011) (finding exercise of federal jurisdiction

proper where "to prove the proximate cause and injury elements of its [legal malpractice] claim,

Michigan law requires Warrior to show that it would have prevailed on its [patent] infringement

claim against STX and would have been entitled to an award of damages as a result"); Air

Measurement Techs. Inc., 504 F.3d at 1269 (When "proof of patent infringement is necessary to

show [plaintiff] would have prevailed in the prior litigation, patent infringement is a 'necessary

element' of [plaintiff's] malpractice claim and therefore . . . presents a substantial question of

patent law conferring § 1338 jurisdiction."); see also Katz v. Holland & Knight LLP, No.

1:08cv1137, 2009 WL 367204, at *4 (E.D. Va. Feb. 12, 2009) (extending Air Measurement to

legal malpractice claim based on copyright infringement suit).

Finally, the exercise of federal jurisdiction here is consistent with Second Circuit

authority endorsing a district court's exercise of supplemental jurisdiction over a legal

malpractice claim related to securities litigation overseen by that court.  See Achtman v. Kirby,

McInerney & Squire LLP, 464 F.3d 328, 334-36 (2d Cir. 2006).

## CONCLUSION

For the reasons stated above, Plaintiff's motion to remand is DENIED.  The Clerk

of the Court is directed to terminate the motion (Dkt No. 9).

Dated: New York, New York
September 25, 2012                    SO ORDERED.

_____
Paul G. Gardephe
United States District Judge